Asa S. Hami (CA Bar No. 210728)
  ahami@sulmeyerlaw.com
Jessica L. Vogel (CA Bar No. 285328)
  jvogel@sulmeyerlaw.com
**Sulmeyer**Kupetz
A Professional Corporation
333 South Hope Street, Thirty-Fifth Floor
Los Angeles, California  90071-1406
Telephone: 213.626.2311
Facsimile: 213.629.4520

[Proposed] Attorneys for Plaintiff
Elissa D. Miller, Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:16-bk-12889-SK |
| LONNIE TODD MOORE, | Chapter 7 |
| Debtor. | |
| ELISSA D. MILLER, Chapter 7 Trustee, | Adv. No. _____ |
| Plaintiff, | **COMPLAINT FOR:** |
| vs. | **(1) AVOIDANCE OF FRAUDULENT TRANSFERS;** |
| LONNIE TODD MOORE, individually and in various capacities in connection with the 914 Trust dated March 26, 2008; COOK ISLANDS TRUST LIMITED, a foreign corporation domiciled in Cook Islands, as trustee of the 914 Trust Dated March 26, 2008; ANTONY WILL, as trustee of the Cook Islands Trust Limited, | **(2) RECOVERY OF TRANSFERRED PROPERTY OR VALUE THEREOF;** |
| | **(3) PRESERVATION OF AVOIDED TRANSFERS;** |
| | **(4) TURNOVER OF PROPERTY;** |
| Defendants. | **(5) DECLARATORY RELIEF; AND** |
| | **(6) AN ACCOUNTING** |
| | Date:    [To be set by summons]<br>Time:    [To be set by summons]<br>Place:   Courtroom 1575<br>             255 E. Temple Street<br>             Los Angeles, CA 90012 |

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL  213.626.2311 • FAX  213.629.4520

1    For her "Complaint for: (1) Avoidance of Fraudulent Transfers; (2) Recovery of Property

2 or Value Thereof; (3) Preservation of Avoided Transfers; (4) Turnover of Property; (5)

3 Declaratory Relief; and (6) an Accounting" (the "Complaint"), plaintiff Elissa D. Miller

4 ("Plaintiff"), the duly appointed, qualified, and acting chapter 7 trustee for the estate of Lonnie

5 Todd Moore, the above-captioned debtor (the "Debtor"), hereby alleges as follows:

6    **STATEMENT OF JURISDICTION, NATURE OF PROCEEDING, AND VENUE**

7    1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(b)(1) and

8 1334(a).  This action is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), (H), and (O).  This

9 action is a proceeding arising in and/or related to the bankruptcy case of *In re Lonnie Todd*

10 *Moore,* Bk. Case No. 2:16-bk-12889-SK (the "Bankruptcy Case"), which is a case under chapter

11 7 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*, (the "Bankruptcy Code"), and

12 which is pending in the United States Bankruptcy Court for the Central District of California, Los

13 Angeles Division (the "Bankruptcy Court" or "Court").  Regardless of whether this proceeding is

14 core, non-core, or otherwise, Plaintiff consents to the entry of a final order and judgment by the

15 Bankruptcy Court.

16    2.    Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a).

17    **PARTIES**

18    3.    Plaintiff is the duly appointed, qualified, and acting chapter 7 trustee of the

19 Debtor's bankruptcy estate (the "Estate").  Plaintiff brings this action solely in her capacity as the

20 chapter 7 trustee.

21    4.    Plaintiff was appointed after the filing of the Bankruptcy Case.  As a result,

22 Plaintiff may not have personal knowledge of certain facts alleged in this Complaint that occurred

23 prior to her appointment and, to the extent that is the case, Plaintiff alleges all such facts on

24 information and belief.  To the extent Plaintiff may not have personal knowledge of any other

25 facts alleged herein, whether relating to acts and events before or after her appointment, all such

26 facts are alleged on information and belief.  Plaintiff reserves the right to amend this Complaint to

27 allege additional claims against one or more of the above-captioned defendants, to challenge,

28 avoid, and/or recover transfers other than and in addition to those alleged in this Complaint, to

1    name additional defendants, and to otherwise amend this Complaint.

2       5.      Plaintiff is informed and believes, and based thereon alleges, that defendant Lonnie

3    Todd Moore, the Debtor, is an individual residing in the State of California, in the County of Los

4    Angeles, in this judicial district.  Plaintiff is further informed and believes, and based thereon

5    alleges, at all relevant times, the Debtor is and was a beneficiary and the protector and settlor of

6    the Trust (defined below).

7       6.      Plaintiff is informed and believes, and based thereon alleges, that defendant Cook

8    Islands Trust Limited ("<u>CITL</u>") is a foreign corporation organized and existing under the laws of

9    the Cook Islands, with its principal place of business in the Rarotonga, Cook Islands.  Plaintiff is

10    further informed and believes, and based thereon alleges, that at all relevant times, CITL is and

11    was a trustee of the Trust.

12       7.      Plaintiff is informed and believes, and based thereon alleges, that defendant

13    Antony Will ("<u>Will</u>") is an individual domiciled in the Cook Islands.  Plaintiff is further informed

14    and believes, and based thereon alleges, that at all relevant times, Will is and was the trustee of

15    CITL.

16                   **<u>ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF</u>**

17       8.      Plaintiff is informed and believes, and based thereon alleges, that in or around

18    March 2008, the Debtor owned a fee simple interest in real property located at 7995 Briar Summit

19    Drive, Los Angeles, California (the "<u>Property</u>"), upon which sits a single family residence.

20       9.      Plaintiff is informed and believes, and based thereon alleges, that, at all relevant

21    times, the Debtor leased and/or continues to lease the Property to Mark David Lewis and/or

22    Yvonne Marie Lewis (the "<u>Lease</u>") and has collected and/or continues to collect no less than

23    $14,000 per month in rental income (the "<u>Rental Income</u>").

24       10.     Plaintiff is informed and believes, and based thereon alleges, that on or about

25    March 26, 2008, pursuant to the "914 Trust Settlement of Trust" (the "<u>Trust Agreement</u>"), the

26    Debtor established the 914 Trust (the "<u>Trust</u>"), an offshore, self-settled trust, under the laws of the

27    Cook Islands, naming himself as the protector ("<u>Protector</u>") and settlor ("<u>Settlor</u>") of the Trust.

28    Plaintiff is further informed and believes, and based thereon alleges, that, at all relevant times, the

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL  213.626.2311 • FAX  213.629.4520

Debtor served and continues to serve in the capacities of Protector and Settlor of the Trust.  A true and correct copy of the Trust Agreement is appended hereto as **Exhibit "1"**.

11.     The Trust Agreement identified the Debtor as one of the beneficiaries of the Trust.

12.     Plaintiff is informed and believes, and based thereon alleges, that the Debtor named James MacDonald ("MacDonald") and CITL as the initial co-trustees of the Trust (the "914 Trustees").

13.     Article III, Section A, of the Trust Agreement provides: "The first Protector shall be the Settlor, who shall serve in such capacity until the earlier of such person's death, legal disability, or resignation."

14.     The Trust Agreement includes multiple provisions to ensure the Debtor always retained full and complete control over the Trust, the Property, and all assets placed into the Trust (collectively, the "Debtor Control Provisions"), and that, as a result of such provisions, at all relevant times, the Debtor retained full and complete control over the Trust, the Property, and all assets placed into the Trust notwithstanding any actions that purport to indicate to the contrary. The Debtor Control Provisions include, but are not necessarily limited to, the following (in no particular order):

a.     The "Proposition 13 Provision"

Proposition 13 Property.  Notwithstanding anything to the contrary in this Settlement, if the Settlor transfers to the Trust any real property located in the State of California … then after such transfer, the Settlor shall retain the same proportional beneficial interest in and to said Proposition 13 Property that the Settlor had immediately prior to such transfer.  During the Settlor's lifetime, distributions of income and/or capital by the Trust from such Proposition 13 Property may be made only to the Settlor, and the Trustees are prohibited from distributing, directly or indirectly, any income and/or capital from Proposition 13 Property to any other beneficiary.  Further, during the Settlor's lifetime, no beneficiary other than the Settlor shall receive from the Trust any benefits of any kind or nature, either directly or indirectly, from such Proposition 13 Property, including the equity therefrom, while the Proposition 13 Property is still an asset of the Trust unless such benefit is entirely incidental to the Settlor's benefiting from such property …

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  2  3  4  5  6

The provisions of this Trust shall be construed and the trusts created hereunder shall be administered solely in accordance with said intention and in a manner consistent with the Proposition 13 Exceptions.  Should the provisions of this Trust become inconsistent with the Proposition 13 Exceptions, then such inconsistent provisions shall be construed in a manner that complies with the Proposition 13 Exceptions, and for that purpose and to such extent, the Proposition 13 Exceptions shall be deemed to override and supersede such provisions.

7    Exhibit 1, Article III, pp 6-7.

8        b.    The "Power of Attorney Provision"

9  10  11  12  13  14

Power of Attorney.  Each Trustee hereby irrevocably grants the Protector its power of attorney, for the purpose of executing any document transferring title of any asset belonging to the Trust Fund from him to the new Trustee, on his resignation or removal as a Trustee.  Such power may be exercised by the Protector without notice to the Trustee provided that this power of this ARTICLE IV shall not be exercised unless a release and indemnity has been completed in accordance with Paragraph M. of this ARTICLE IV.

15    Exhibit 1, Article IV, Section E.

16        c.    The "Veto Provision"

17  18  19  20  21  22  23  24

Veto Power of Protector.  Notwithstanding anything to the contrary herein contained, and in particular anything conferring absolute or uncontrolled discretion on the Trustees hereof, all and every power and discretion vested in the Trustees by such provisions of this Settlement as are specified in Schedule VIII attached hereto and incorporated herein by this reference shall only be exercisable by them subject always to the power of the Protector to veto any exercise by the Trustees of such power or discretion, and accordingly the Trustees shall be required to provide the Protector with reasonable prior notice before any such powers or discretions may be exercised so as to allow the Protector reasonable advance opportunity within which to veto or refrain from vetoing the exercise of the power or discretion.

25    Exhibit 1, Article VII, Section D.

26        d.    The "Fraudulent Transfer Provision"

27    Provision for Certain Obligations.

28    1. The Settlor wishes to protect against any transfer of money or property by any contributor to the Trust from being a fraudulent

1

transfer to the detriment of a creditor of the Settlor …
notwithstanding any provision of the Applicable Law … to the

2

contrary … the Trustees are direct to pay out of the Transfers or any
accretions or additions thereto, or substitutions thereof or proceeds

3

therefrom  … any amounts … (i) that are ultimately and finally
judicially determined to be properly due and owing such a claimant

4

by the contributor and that are not ultimately satisfied; or (ii) with
respect to which the contributor of the respectively contributed

5

property has voluntarily and not under duress agreed to the payment
or settlement thereof …

6

7

Exhibit 1, Article X, Section J.

8

15.     Plaintiff is informed and believes, and based thereon alleges, that the Debtor

9

specifically included the Debtor Control Provisions in his attempt to maintain absolute control

10

over the Trust, the Property, and other assets placed into the Trust despite the role of the 914

11

Trustees and any removal of the Debtor as a beneficiary under the Trust.

12

16.     Plaintiff is informed and believes, and based thereon alleges, that on or about May

13

21, 2008, the Debtor transferred title to the Property to MacDonald and CITL, in their capacities

14

as co-trustees of the Trust, for no consideration, pursuant to a grant deed (the "2008 Grant

15

Deed"), duly recorded in the Los Angeles County Recorder's Office on or about June 10, 2008

16

(the "2008 Transfer").  A true and correct copy of the 2008 Grant Deed is appended hereto as

17

**Exhibit "2".**

18

17.     Plaintiff is informed and believes, and based thereon alleges, that, notwithstanding

19

the 2008 Transfer, the Debtor retained full and complete control over the Property, including, but

20

not limited to, its use, disposition, and proceeds generated therefrom, as a result of the Debtor

21

Control Provisions of the Trust Agreement .

22

18.     Plaintiff is informed and believes, and based thereon alleges, that following a

23

dispute between the Debtor and MacDonald, on or about April 18, 2012, the Debtor, acting

24

pursuant to the Power of Attorney Provision, executed a quitclaim deed (the "2012 Quitclaim

25

Deed") transferring the interest in the Property MacDonald held solely in his capacity as co-

26

trustee of the Trust to CITL, as sole trustee for the benefit of the Trust (the "2012 Transfer").  The

27

2012 Quitclaim Deed was subsequently recorded on or about June 7, 2012.  A true and correct

28

copy of the 2012 Quitclaim Deed is appended hereto as **Exhibit "3"**.  As a result, Plaintiff is

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    informed and believes, and based thereon alleges, that MacDonald claims no further interest in

2    the Property in any capacity.

3        19.    Plaintiff is informed and believes, and based thereon alleges, that in addition to the

4    Property, the Trust has other assets (the "<u>Other Trust Assets</u>"), which the Debtor transferred to the

5    Trust at various points within the applicable reachback periods (the "<u>Other Trust Transfers</u>").

6    Plaintiff currently lacks information regarding the identity of the Other Trust Assets and the

7    timing of the Other Trust Transfers.  Plaintiff will amend this Complaint as is necessary and

8    appropriate following receipt of further information regarding the Other Trust Assets and Other

9    Trust Transfers to include further allegations regarding such matters and to add additional claims

10    for relief to avoid and recover the Other Trust Transfers, or to otherwise seek appropriate relief

11    based on the Other Trust Transfers.

12        20.    On March 7, 2016 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for

13    relief under chapter 13 of the Bankruptcy Code, commencing the Bankruptcy Case.

14        21.    On March 21, 2016, the Debtor filed his bankruptcy schedules in the Bankruptcy

15    Case (the "<u>Bankruptcy Schedules</u>") and Statement of Financial Affairs (the "<u>SOFA</u>").  Plaintiff is

16    informed and believes, and based thereon alleges, that the Debtor executed the Bankruptcy

17    Schedules and the SOFA under penalty of perjury.

18        22.    The Bankruptcy Schedules identify debts in the sum of $3,488,242.37 and assets in

19    the sum of only $75,910.  Plaintiff is informed and believes, and based thereon alleges, that the

20    Debtor incurred substantial debt before the 2008 Transfer.

21        23.    The Debtor did not identify his interest in the Property, the Lease, the Rental

22    Income, the Trust, the 2008 Transfer, the 2012 Transfer, or any of the Other Trust Assets in the

23    Bankruptcy Schedules or SOFA.

24        24.    On April 14, 2016, the Debtor filed a notice of conversion, pursuant to which the

25    Bankruptcy Case was converted from a case under chapter 13 to a case under chapter 7.

26        25.    Shortly thereafter, Plaintiff was appointed as the chapter 7 trustee and continues to

27    serve in that capacity.

28

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

### FIRST CLAIM FOR RELIEF

### (For Avoidance Of 2008 Transfer Under 11 U.S.C. § 548(e))

26.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 25 as though set forth in full.

27.     Plaintiff is informed and believes, and based thereon alleges, that the 2008 Transfer was a transfer of an interest of the Debtor in property that was made within 10 years before the Petition Date.

28.     Plaintiff is informed and believes, and based thereon alleges, that the Trust is a self-settled trust.

29.     Plaintiff is informed and believes, and based thereon alleges, that at all relevant times the Debtor is and was a beneficiary under the Trust.

30.     Plaintiff is informed and believes, and based thereon alleges, that pursuant to the Proposition 13 Provision, the Debtor cannot be removed as a beneficiary under the Trust especially, but not necessarily limited to, in respect of the Property.

31.     Plaintiff is informed and believes, and based thereon alleges, that the Debtor made the 2008 Transfer with the actual intent to hinder, delay, or defraud his creditors, both then existing and future creditors in that, among other things:

    a.     the 2008 Transfer was made to one or more insiders;

    b.     shortly before the 2008 Transfer, on or about December 13, 2007, the Debtor was named as a defendant in a civil action, bearing the caption *Skye-Anne Smith v. Lonnie Todd Moore et* al, Case No. BC382327 in the Superior Court of the State of California, County of Los Angeles;

    c.     before or about the time of the 2008 Transfer, the Debtor was threatened with suit or knew that he would be sued by, among others, an investor in Dolce Group Atlanta, LLC, in which the Debtor was a member, for the return of the investor's $1,000,000 investment;

    d.     at or around the time of the 2008 Transfer, the Debtor held significant equity in the Property and collected the Rental Income;

    e.     the 2008 Transfer effectuated a transfer of substantially all of the Debtor's

1    assets in that, among other things, the assets with which the Debtor was left with following the

2    2008 Transfer had little to no value or had values far less than the values of the Property

3    transferred through the 2008 Transfer;

4                f.        the Debtor did not receive any consideration in exchange for the 2008

5    Transfer;

6                g.        through the 2008 Transfer, the Debtor attempted to place the Property

7    beyond the reach of the Debtor's creditors and outside the jurisdiction of United States;

8                h.        as a result of the Debtor Control Provisions, after the 2008 Transfer, the

9    Debtor retained full and complete control over the Property, its use and disposition, and related

10    Rental Income, and retained complete veto power over any and all actions of the 914 Trustees;

11                i.        the Debtor intentionally concealed the Property, Rental Income, and 2008

12    Transfer by failing to list them in his Bankruptcy Schedules or SOFA;

13                j.        the Debtor was insolvent at the time of the 2008 Transfer or became

14    insolvent as a result of, or shortly after, the 2008 Transfer;

15                k.        the 2008 Transfer occurred after or shortly before the Debtor incurred

16    substantial debt;

17                l.        the Debtor is not using the Trust res to pay his creditors in contradiction of

18    the explicit provisions of the Trust Agreement, including, but not necessarily limited to, the

19    Fraudulent Transfer Provision;

20        32.    Interest on the 2008 Transfer, or the value of the 2008 Transfer, has accrued and

21    continues to accrue, and/or the value of the Property has increased, and continues to increase,

22    from the date of the 2008 Transfer.

23        33.    Plaintiff is entitled to an order and/or judgment that the 2008 Transfer is avoided

24    and/or providing any other remedy available under applicable law.

25                    **SECOND CLAIM FOR RELIEF**

26                **(For Recovery Of Avoided Transfer Under 11 U.S.C. § 550)**

27        34.    Plaintiff realleges and incorporates herein by reference each and every allegation

28    contained in paragraphs 1 through 33 as though set forth in full.

Sulmeyer Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

35.     Plaintiff is informed and believes, and based thereon alleges, that the 2008 Transfer is a transfer that should be avoided pursuant to § 548(e) of the Bankruptcy Code as alleged in this Complaint and, based thereon, Plaintiff is entitled to avoid the 2008 Transfer.

36.     Plaintiff is informed and believes, and based thereon alleges, that CITL (as trustee of the Trust) and/or Will (as trustee of CITL) are transferees (initial, immediate, mediate, or otherwise) of the 2008 Transfer within the meaning of 11 U.S.C. § 550(a).

37.     Plaintiff is entitled to an order and/or judgment for the recovery of the Property, or the value thereof, including any increase in the value of the Property since the time of the Transfer, together with interest at the applicable rate from the date of the 2008 Transfer, for the benefit of the Estate.

### THIRD CLAIM FOR RELIEF

### (For Preservation Of Transfers Avoided Under 11 U.S.C. § 551)

38.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 37 as though set forth in full.

39.     Plaintiff is entitled to an order and/or judgment preserving, for the benefit of the Estate, the 2008 Transfer once avoided.

### FOURTH CLAIM FOR RELIEF

### (For Turnover Of Property Under 11 U.S.C. § 542(a))

40.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 39 as though set forth in full.

41.     Plaintiff is informed and believes, and based thereon alleges, that the Property is property of the Estate.

42.     Plaintiff is informed and believes, and based thereon alleges, that the Property is property that Plaintiff may use, sell, or lease under 11 U.S.C. § 363, and that such property is not of inconsequential value or benefit to the Estate.

43.     Plaintiff is informed and believes, and based thereon alleges, that the Debtor, the Trust, CITL, and/or Will are entities, other than a custodian, in possession, custody, or control, during this bankruptcy case, of the Property.

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL  213.626.2311 • FAX  213.629.4520

44.     Plaintiff is entitled to an order and/or judgment for the turnover of the Property, or the value thereof, or such other amounts due and owing and subject to recovery, together with interest at the applicable rate.

## FIFTH CLAIM FOR RELIEF

### (For Turnover Of Property Under 11 U.S.C. § 542(a))

45.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 44 as though set forth in full.

46.     Plaintiff is informed and believes, and based thereon alleges, that the Rental Income is property of the Estate.

47.     Plaintiff is informed and believes, and based thereon alleges, that the Rental Income is property that Plaintiff may use, sell, or lease under 11 U.S.C. § 363, and that such property is not of inconsequential value or benefit to the Estate.

48.     Plaintiff is informed and believes, and based thereon alleges, that Debtor, the Trust, CITL, and/or Will is an entity, other than a custodian, in possession, custody, or control, during this bankruptcy case, of the Rental Income.

49.     Plaintiff is entitled to an order and/or judgment for the turnover of the Rental Income together with interest at the applicable rate.

## SIXTH CLAIM FOR RELIEF

### (For Declaratory Relief)

50.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 49 as though set forth in full.

51.     Plaintiff is informed and believes, and based thereon alleges, that an actual controversy exists between Plaintiff, on the one hand, and one or more of the Debtor, CITL, and Will (collectively, the "Disputants"), on the other hand, relating to the effect and enforceability of the 2008 Transfer, the 2012 Transfer, and/or the Other Trust Transfers (collectively, the "Trust Transfers").

52.     Plaintiff contends that the Trust Transfers, and each of them, were shams, designed to place assets outside the reach of the Debtor's creditors and/or in furtherance of a scheme to

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    defraud the Debtor's creditors.

2        53.    Plaintiff further contends that, despite the Trust Transfers, the Property, the Rental

3    Income, and the Other Trust Assets are property of the Estate.  In the alternative, Plaintiff

4    contends that, upon avoidance of the Trust Transfers and/or recovery of the property subject to

5    the Trust Transfers, the Property, the Rental Income, and the Other Trust Assets are property of

6    the Estate.

7        54.    Plaintiff further contends that the Property, the Rental Income, and Other Trust

8    Assets should be treated in ownership, status, and character as if none of the Trust Transfers

9    occurred.

10        55.    Plaintiff further contends that, by virtue of the Debtor's unrestricted control over

11    the Trust, and ability to use the Trust assets for his sole benefit, the Property, the Rental Income,

12    the Other Trust Assets, even if not expressly identified in this Complaint, is property of the Estate

13    as that term is defined in section 541 of the Bankruptcy Code.  In the alternative, Plaintiff

14    contends that the spendthrift provisions in the Trust Agreement, restricting the Debtor's beneficial

15    interest in the Trust, are invalid and unenforceable against transferees or creditors of the Debtor,

16    which includes Plaintiff pursuant to section 544 of the Bankruptcy Code.

17        56.    Plaintiff is informed and believes, and based thereon alleges, that the Disputants,

18    and each of them, dispute each of Plaintiff's contentions in paragraphs 54 through 57 above,

19    inclusive.

20        57.    As a result of the foregoing controversies and disputes, a judicial declaration of

21    one or more of the following is necessary and appropriate: (a) that the Trust Transfers, and each

22    of them, were shams, designed, entered, and/or executed with the intent of placing the Property,

23    the Rental Income, and the Other Trust Assets outside the reach of the Debtor's creditors and/or

24    in furtherance of a scheme to defraud the Debtor's creditors; (b) that, despite the Trust Transfers,

25    the Property, the Rental Income, and the Other Trust Assets are property of the Estate; (c) that

26    upon avoidance of the Trust Transfers and/or recovery of the property subject to the Trust

27    Transfers, including the Property, the Rental Income, and the Other Trust Assets, are property of

28    the Estate; (d) that the Property, the Rental Income, and the Other Trust Assets should be treated

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  in ownership, status, and character as if none of the Trust Transfers occurred (e) that, by virtue of

2  the Debtor's unrestricted control over the Trust, and ability to use the Trust assets for his sole

3  benefit, the Property, the Rental Income, and the Other Trust Assets, are property of the Estate, as

4  that term is defined in section 541 of the Bankruptcy Code; and/or (f) that the spendthrift

5  provisions in the Trust Agreement, restricting the Debtor's beneficial interest in the Trust, are

6  invalid and unenforceable against transferees or creditors of the Debtor, which includes Plaintiff

7  pursuant to section 544 of the Bankruptcy Code.

8  **SEVENTH CLAIM FOR RELIEF**

9  **(For An Accounting)**

10      58.    Plaintiff realleges and incorporates herein by reference each and every allegation

11  contained in paragraphs 1 through 57 as though set forth in full.

12      59.    Plaintiff is informed and believes, and based thereon alleges, that the Debtor has

13  failed and continues to fail to turn over the undisclosed Rental Income.

14      60.    The information necessary for Plaintiff to determine the exact amount of monies

15  owing to Plaintiff by the Debtor from the collection of undisclosed Rental Income is in the

16  exclusive possession, custody, or control of the Debtor.

17      61.    During the respective post-petition time periods in which the Property has been

18  leased, the Debtor failed to provide the Plaintiff with an accounting such that the Plaintiff could

19  determine the extent of the funds due and owing to the Plaintiff by the Debtor from the collection

20  of undisclosed Rental Income.

21      62.    Prior to the filing of this Complaint, Plaintiff has made demands on the Debtor for

22  such accounting.  By this Complaint, Plaintiff further demands such accounting.  Despite

23  Plaintiffs demands, the Debtor has failed and refused, and continues to fail and refuse, to tender

24  such accounting to the Plaintiff.

25      **WHEREFORE**, Plaintiff respectfully prays for judgment against Debtor/Defendant(s) as

26  follows:

27  **ON THE FIRST CLAIM FOR RELIEF:**

28      1.    That the 2008 Transfer is avoided and/or providing any other remedy available

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1 under applicable law;

2 **ON THE SECOND CLAIM FOR RELIEF:**

3     2.    For the recovery of the Property, or the value thereof, including any increase in the

4 value of the Property since the date of the 2008 Transfer, with interest at the applicable rate from

5 the date of the Transfer, for the benefit of the Estate;

6 **ON THE THIRD CLAIM FOR RELIEF:**

7     3.    Preserving, for the benefit of the estate, the 2008 Transfer once avoided;

8 **ON THE FOURTH CLAIM FOR RELIEF:**

9     4.    For the turnover of the Property, or the values thereof, or such other amounts due

10 and owing and subject to recovery, together with interest at the applicable rate;

11 **ON THE FIFTH CLAIM FOR RELIEF:**

12     5.    For the turnover of the Rental Income, and subject to recovery, together with

13 interest at the applicable rate;

14 **ON THE SIXTH CLAIM FOR RELIEF:**

15     6.    For a judicial declaration of, one or more of the following: (a) that the Trust

16 Transfers, and each of them, were shams, designed, entered, and/or executed with the intent of

17 placing the Property, the Rental Income, and the Other Trust Assets outside the reach of the

18 Debtor's creditors and/or in furtherance of a scheme to defraud the Debtor's creditors; (b) that,

19 despite the Trust Transfers, the Property, the Rental Income, and the Other Trust Assets are

20 property of the Estate; (c) that upon avoidance of the Trust Transfers and/or recovery of the

21 property subject to the Trust Transfers, including the Property, the Rental Income, and the Other

22 Trust Assets, are property of the Estate; (d) that the Property, the Rental Income, and the Other

23 Trust Assets should be treated in ownership, status, and character as if none of the Trust Transfers

24 occurred (e) that, by virtue of the Debtor's unrestricted control over the Trust, and ability to use

25 the Trust assets for his sole benefit, the Property, the Rental Income, and the Other Trust Assets,

26 are property of the Estate, as that term is defined in section 541 of the Bankruptcy Code; and/or

27 (f) that the spendthrift provisions in the Trust Agreement, restricting the Debtor's beneficial

28 interest in the Trust, are invalid and unenforceable against transferees or creditors of the Debtor,

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1 | which includes Plaintiff pursuant to section 544 of the Bankruptcy Code.

2 | **ON THE SEVENTH CLAIM FOR RELIEF:**

3 | 7.    For the accounting described in the seventh claim for relief herein.

4 | **ON ALL CLAIMS FOR RELIEF:**

5 | 8.    For costs of suit incurred herein, including, without limitation, attorney's fees; and

6 | 9.    For such other and further relief as is proper.

8 | Dated: July 27, 2016

**Sulmeyer**Kupetz
A Professional Corporation

By:    */s/ Jessica L. Vogel*
       Asa S. Hami
       Jessica L. Vogel
       [Proposed] Attorneys for Plaintiff
       Elissa D. Miller, Chapter 7 Trustee

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

# EXHIBIT 1

# 914 TRUST

## SETTLEMENT OF TRUST

Dated: _March 26_, 2001

00016

## TABLE OF CONTENTS

Page

ARTICLE I          Definitions . . . . . . . . . . . . . . . .  1

    A.   "Applicable Law"  . . . . . . . . . . . . . . .  2
    B.   "Appointed Class" . . . . . . . . . . . . . . .  2
    C.   "Beneficiaries" . . . . . . . . . . . . . . . .  2
    D.   "Child" or "Children" . . . . . . . . . . . . .  2
    E.   "Code Section" . . . . . . . . . . . . . . . . .  2
    F.   "Excluded Person" . . . . . . . . . . . . . . .  2
    G.   "Issue" . . . . . . . . . . . . . . . . . . . .  3
    H.   "Person" . . . . . . . . . . . . . . . . . . . .  3
    I.   "Protector" . . . . . . . . . . . . . . . . . .  3
    J.   "Right of Representation" . . . . . . . . . . .  3
    K.   "Scheduled Investment" . . . . . . . . . . . .  4
    L.   "Trust" . . . . . . . . . . . . . . . . . . . .  4
    M.   "Trust Fund" . . . . . . . . . . . . . . . . . .  4
    N.   "Trust Period" . . . . . . . . . . . . . . . . .  4
    O.   "Trustees" . . . . . . . . . . . . . . . . . . .  4

ARTICLE II         Additional Trust Property . . . . . . . .  5

ARTICLE III        Dispositive Provisions . . . . . . . . . .  5

    A.   Distributions During Settlor's Lifetime. . . . .  5
    B.   Undistributed Net Income. . . . . . . . . . . .  7
    C.   No Requirement of Equal Distributions. . . . . .  8
    D.   Inter Vivos Power of Appointment. . . . . . . .  8
    E.   Testamentary Power of Appointment. . . . . . . .  8
    F.   Nature of Powers of Appointment. . . . . . . . .  9
    G.   Provisions Following Settlor's Death. . . . . .  9
    H.   Distribution at Termination of Trust Period. . . 26

ARTICLE IV         Trustees . . . . . . . . . . . . . . . . . 28

    A.   Appointment of Successor Trustees. . . . . . . . 28
    B.   Removal of Trustees and Additional Trustees. . . 28
    C.   Resignation of Trustees. . . . . . . . . . . . . 29
    D.   Expenses of Removal, Addition, or Succession of
         Trustees. . . . . . . . . . . . . . . . . . . . 30
    E.   Power of Attorney. . . . . . . . . . . . . . . . 30
    F.   Powers of Successor or Additional Trustees. . . 30
    G.   Memorandum of Change in Trustees. . . . . . . . 31
    H.   Actions of Corporate Trustee. . . . . . . . . . 31
    I.   Limitation on Liability. . . . . . . . . . . . . 31
    J.   Liability of Trustees for Breaches of Trust. . . 32
    K.   Special Restrictions on Trustee Liabilities. . . 32
    L.   Indemnity. . . . . . . . . . . . . . . . . . . . 34
    M.   Release of Trustee. . . . . . . . . . . . . . . 34
    N.   Trustee Compensation. . . . . . . . . . . . . . 35
    O.   Custodian Trustee. . . . . . . . . . . . . . . . 35

-i-

<u>Page</u>

ARTICLE V          <u>Administrative and Protective Provision</u> .  36

   A.    Freedom From Outside Interference. . . . . . . .  36
   B.    Spendthrift Provision. . . . . . . . . . . . .  37
   C.    Permissible  Factors  in  Trustees'  Exercise  of
         Discretion. . . . . . . . . . . . . . . . . . .  38
   D.    Limitation on Obligation to Undertake Litigation to
         Collect Death Benefits. . . . . . . . . . . . .  38
   E.    Delegation by Trustees. . . . . . . . . . . . .  39
   F.    Revisions of Interests. . . . . . . . . . . . .  39
   G.    Disclaiming of Interest. . . . . . . . . . . .  40
   H.    Disregarding Interests of Others. . . . . . . .  41
   I.    Change in Applicable Law. . . . . . . . . . . .  41
   J.    Change in Certain Provisions. . . . . . . . . .  42
   K.    Change in Trust Period. . . . . . . . . . . . .  43
   L.    Discretions of Trustees. . . . . . . . . . . .  43
   M.    Certain  Life  Insurance  Proceeds  and  Certain  Other
         Property Received by Trustees. . . . . . . . .  45
   N.    Exclusive Benefit. . . . . . . . . . . . . . .  45

ARTICLE VI         <u>Trustee Powers</u> . . . . . . . . . . . . .  46

   A.    Settlement of Further Trusts. . . . . . . . . .  46
   B.    Transfer of Trust Fund. . . . . . . . . . . . .  47
   C.    Settlement of Capital. . . . . . . . . . . . .  47
   D.    Payment of Taxes. . . . . . . . . . . . . . . .  48
   E.    Formation of Companies. . . . . . . . . . . . .  48
   F.    Formation of Partnerships and Like Organizations. .  49
   G.    Interpretation of Foregoing Provisions. . . . . .  49
   H.    Charitable Distributions. . . . . . . . . . . .  49
   I.    Extension of Credit. . . . . . . . . . . . . .  50
   J.    Interested Trustees. . . . . . . . . . . . . .  51
   K.    Additional Powers. . . . . . . . . . . . . . .  51
   L.    Limitation  on  Trustees'  Powers  after  the  Death  of
         the Settlor. . . . . . . . . . . . . . . . . .  52

ARTICLE VII        <u>Trust Protector</u> . . . . . . . . . . . .  53

   A.    Designation of Protector. . . . . . . . . . . .  53
   B.    Successor Protector. . . . . . . . . . . . . .  53
   C.    Vacancy. . . . . . . . . . . . . . . . . . . .  54
   D.    Veto Power of Protector. . . . . . . . . . . .  54
   E.    Waiver of Veto Power. . . . . . . . . . . . . .  55
   F.    Trust  Construction If No Protector. . . . . . .  55
   G.    Committee of Trust Protectors. . . . . . . . . .  56

00018

                                                              **Page**

ARTICLE VIII      <u>Irrevocable Trust</u> . . . . . . . . . . .  56


ARTICLE IX        <u>Applicable Law</u>  . . . . . . . . . .  56


ARTICLE X         <u>General Provisions</u>  . . . . . . . . . .  58

    A.    Exercise of Power of Appointment. . . . . . . .  58
    B.    Release or Retention of Powers. . . . . . . . .  59
    C.    Headings Not to be Considered. . . . . . . . .  60
    D.    Disclosure. . . . . . . . . . . . . . . . . .  60
    E.    Survivorship. . . . . . . . . . . . . . . . .  60
    F.    Methods of Distribution. . . . . . . . . . . .  60
    G.    Validity. . . . . . . . . . . . . . . . . . .  61
    H.    Notices. . . . . . . . . . . . . . . . . . . .  61
    I.    Distribution to Custodians. . . . . . . . . . .  61
    J.    Provision for Certain Obligations. . . . . . .  62
    K.    Special Provisions. . . . . . . . . . . . . .  67
    L.    Settlement Schedules. . . . . . . . . . . . .  67


SCHEDULE I . . . . . . . . . . . . . . . . . . . . .  68

SCHEDULE II . . . . . . . . . . . . . . . . . . . .  69

SCHEDULE III . . . . . . . . . . . . . . . . . . . .  70

SCHEDULE IV . . . . . . . . . . . . . . . . . . . .  71

SCHEDULE V . . . . . . . . . . . . . . . . . . . . .  72

SCHEDULE VI . . . . . . . . . . . . . . . . . . . .  73

SCHEDULE VII . . . . . . . . . . . . . . . . . . . .  88

SCHEDULE VIII . . . . . . . . . . . . . . . . . . .  89

SCHEDULE IX . . . . . . . . . . . . . . . . . . . .  90

00019

## 914 TRUST

THIS SETTLEMENT OF TRUST is made and entered into the _26_ day of ___March___, 200_8_, by and among Lonnie Moore, an individual whose mailing address is 7995 Briar Summit Drive, Los Angeles, California 90046 (hereinafter referred to as the "Settlor"), and the Co-Trustees whose names and respective addresses are as set forth in Schedule I attached hereto and incorporated herein by this reference (hereinafter collectively referred to as the "Trustees" and separately as "Trustee").

## W I T N E S S E T H :

WHEREAS, the Settlor intends to have transferred or has transferred and delivered to the Trustees the money and/or other property described in Schedule II attached hereto and incorporated herein by this reference; and

WHEREAS, the Trustees agree to hold, administer and distribute such property in trust, and all accretions and additions thereto as accepted by the Trustees, from whatever source, according to all the terms and conditions of this Settlement of Trust;

NOW, THEREFORE, the Settlor and the Trustees agree as next set forth.

## ARTICLE I
## Definitions

As used herein, the terms set forth below shall have the defined meanings unless the context clearly indicates to the contrary or unless specifically provided otherwise herein. Further, as used herein, the masculine, feminine and neuter genders, and the singular and plural numbers, shall each be allowed

to include the others unless the context, clearly indicates to the contrary or unless specifically provided herein.

A.    **"Applicable Law"** means the law of the jurisdiction to which the rights of all parties hereto shall be subject, to which the construction and effect of this Settlement shall be subject, and by which such rights, construction and effect shall be construed, interpreted and governed.

B.    **"Appointed Class"** means, subject to ARTICLE V, Paragraphs F., G. and H. hereof:   (i) the Beneficiaries (as hereinafter defined); (ii) any then living spouse, surviving spouse, Child (as hereinafter defined) or other Issue (as hereinafter defined) of any of the Beneficiaries; (iii) The American Cancer Society, the national office or any local affiliate.   No person who is an Excluded Person hereunder (as hereinafter defined) shall be capable of being a member of the Appointed Class.

C.    **"Beneficiaries"** means the persons identified in Schedule III attached hereto and incorporated herein by this reference.

D.    **"Child" or "Children"** means the Issue in the first degree of the parent designated, exclusive of illegitimate descendants who have not been legitimated or legally adopted.

E.    **"Code Section"** means a section of the United States 1986 Internal Revenue Code (the "Code"), and any reference in this Settlement to a particular Code Section means such referenced Code Section as it presently exists and as it may hereafter be amended, or any Code Section substituted for or succeeding such referenced Code Section.

F.    **"Excluded Person"** means any person who is specified as such in Schedule IV attached hereto and incorporated herein by this

-2-

reference, or who is so designated pursuant to ARTICLE V, Paragraph F. hereof.

G.  "Issue" means the blood descendants in any degree of the ancestor designated.  If a person has been legitimated or legally adopted before attaining the age of eighteen (18) years, that Child and his Issue shall be considered as Issue of the legitimating or adopting parent or parents and of anyone who is by blood or legitimation or adoption an ancestor of the adopting parent or either of the adopting parents.

H.  "Person" means, when used generally herein, an individual, person, firm, company, trust, association, entity, or other such classification.  When used generally herein, such word need not be capitalized.

I.  "Protector" means the person who is initially designated as such pursuant to ARTICLE VII, Paragraph A. hereof and such person's respective successors pursuant to ARTICLE VII hereof.  If the Protector exercises the Protector's right and power to form a committee of protectors, pursuant to ARTICLE VII, Paragraph G. hereof, then the singular "Protector" shall be deemed to refer to the committee for so long as such a committee may exist.

J.  "Right of Representation" means the estate of the matter being divided into as many shares as there are surviving heirs in the nearest degree of kinship and deceased persons in the same degree who left Issue who survive the decedent, each surviving heir in the nearest degree receiving one share and the share of each deceased person in the same degree being divided among his Issue in the same manner.  For purposes of the foregoing, "heirs" means those persons who are entitled under the law of intestate succession to the property of the decedent, as determined by the law of the decedent's domicile.

-3-

K.    "**Scheduled Investment**" means any item or class of items described in Schedule II hereof.

L.    "**Trust**" means the 914 Trust, to be held, administered and distributed pursuant to this Settlement.

M.    "**Trust Fund**" means the assets that from time to time shall comprise the trust estate hereof, and includes (i) that which is set forth in Schedule II hereto; (ii) all accumulations or accretions thereof, and additions transferred to and accepted by the Trustees as additions thereto; and (iii) the investments and property from time to time representing the same or any part thereof. Any reference herein to the Trust Fund shall be deemed to include any accumulations of income which have not been added to the capital of the Trust Fund, unless specifically provided to the contrary herein.

N.    "**Trust Period**" means the period of time that commenced as of the date first above written, and continuing through and including the first to occur of the following dates or points in time:  (i) the twentieth anniversary of the death of the last survivor of the descendants living as of the date first above written of his late majesty King George the Fifth of England; (ii) the date as of which the entirety of the Trust Fund has been distributed according to the terms and provisions hereof; or (iii) such date or dates as the Trustees may in their discretion appoint by a signed declaration in writing pursuant to ARTICLE V, Paragraph K. hereof, which declaration shall by its terms be applicable to the whole or such part or portions of the Trust Fund as shall therein be specified.

O.    "**Trustees**" means the co-trustees identified in Schedule I hereto, and includes their respective successor or successors, and any other Trustees who may be in office from time to time pursuant hereto.

-4-

00023

## ARTICLE II
### Additional Trust Property

The Settlor and any other person shall have the right at any time to add to the Trust Fund, by will, inter vivos gift, or otherwise, other money or property, whether tangible or intangible, real or personal, or otherwise, provided such is acceptable to the Trustees.  Such additional money or property, upon its receipt and acceptance by the Trustees, shall become a part of the Trust Fund as referenced in ARTICLE I, Paragraph M. above.

For purposes hereof, any improvement(s) made upon any real property which at any time constitutes a part or the entirety of the Trust Fund, and any payment by a person of fees, costs or expenses incurred by or on behalf of the Trust Fund, shall be an addition to the Trust Fund by the person who bears the cost thereof and pays the same, and any such additional contribution shall not require acceptance by the Trustees for the same to become a part of the Trust Fund.  The foregoing shall be inapplicable to any payment by an entity or the like in which the Trust Fund may have an interest, and shall further be inapplicable if and to the extent such person indicates a contrary intention in writing concurrent with or prior to the payment.

## ARTICLE III
### Dispositive Provisions

The Trustees shall, subject to the other terms and provisions of this Settlement of Trust, hold, administer and distribute the Trust Fund according to the following terms and provisions:

A.   **Distributions During Settlor's Lifetime.**  During the lifetime of the Settlor, the Trustees may pay to, appropriate or apply for the benefit of one, more or all members of the Appointed Class so much of the net income and/or capital of the Trust Fund as

-5-

00024

the Trustees in their sole and absolute, discretion may think fit for their maintenance, support, education, comfort, well-being, pleasure, desire or happiness. The foregoing is subject to the provisions of Paragraphs D. and E. below.

*Proposition 13 Property.* Notwithstanding anything to the contrary in this Settlement, if the Settlor transfers to the Trust any real property located in the State of California (such real property shall be referred to as "Proposition 13 Property"), then after such transfer, the Settlor shall retain the same proportional beneficial interest in and to said Proposition 13 Property that the Settlor had immediately prior to such transfer. During the Settlor's lifetime, distributions of income and/or capital by the Trust from such Proposition 13 Property may be made only to the Settlor, and the Trustees are prohibited from distributing, directly or indirectly, any income and/or capital from the Proposition 13 Property to any other beneficiary. Further, during the Settlor's lifetime, no beneficiary other than the Settlor shall receive from the Trust any benefits of any kind or nature, either directly or indirectly, from such Proposition 13 Property, including the equity therefrom, while the Proposition 13 Property is still an asset of the Trust unless such benefit is entirely incidental to the Settlor's benefiting from such property. Notwithstanding the two immediately preceding sentences, however, the Settlor shall retain with respect to any Proposition 13 Property the limited powers of appointment set forth in Paragraphs D. and E. of ARTICLE III, which shall apply in all respects to the Proposition 13 Property.

The Settlor intends that any transfer of Proposition 13 Property to the Trust not be considered a "change of ownership" pursuant to the exceptions contained in Section 62(a)(2) of the California Revenue and Taxation Code and Rule 462.160(b)(5) issued by the Board of Equalization for the State of California, and pursuant to any other exception that may apply under California law

-6-

(hereinafter "Proposition 13 Exceptions"). All references in this Trust to such Proposition 13 Exceptions shall include any amendments or successor section(s) and/or rule(s) that may be properly issued hereafter. The provisions of this Trust shall be construed and the trusts created hereunder shall be administered solely in accordance with said intention and in a manner consistent with the Proposition 13 Exceptions. Should the provisions of this Trust become inconsistent with the Proposition 13 Exceptions, then such inconsistent provisions shall be construed in a manner that complies with the Proposition 13 Exceptions, and for that purpose and to such extent, the Proposition 13 Exceptions shall be deemed to override and supersede such provisions. If the Proposition 13 Exceptions at any time require the Trust to contain provisions that are not expressly set forth herein, such provisions shall be incorporated into this Trust by reference and shall be deemed to be a part of this Trust to the same extent as though they had been expressly set forth herein.

B.   <u>Undistributed Net Income</u>. Any net income of the Trust Fund which is not distributed shall be accumulated and added to the capital of the Trust Fund on an annual basis (or more frequently as the Trustees may determine in their sole and absolute discretion) as an accretion thereto, with the purpose that such income shall be held upon and subject to the same terms and provisions of this Settlement as apply to the capital of the Trust Fund. If, however, the Trustees determine to so do in their sole and absolute discretion, or if so required by Applicable Law, the Trustees shall accumulate all the residue (if any) of the net income of the Trust Fund arising during the Trust Period (or such shorter period as under the Applicable Law of this Settlement may be the maximum period for the accumulation of income), and in such case the Trustees shall hold all accumulations of income and the investment and the property representing the same from time to time or any part thereof, with full and absolute power to appoint, pay, appropriate or apply such accumulations of any preceding year or

-7-

years (or parts thereof) as if such accumulations were income of
the then current year.

C.   <u>No Requirement of Equal Distributions</u>.  In exercising the
discretion conferred by Paragraphs A. and B. immediately above, the
Trustees may pay more to, appropriate, or apply more for some
members of the Appointed Class than others and may make payments to
or application of benefits for one or more of them to the exclusion
of others.  Any payment or application of benefits pursuant to this
Paragraph C. shall be charged against the Trust Fund as a whole
rather than against the ultimate distributive share (if any) of a
member of the Appointed Class to whom or for whose benefit payment
is made.

D.   <u>Inter Vivos Power of Appointment</u>.  Subject to Paragraph
F. of this ARTICLE III, and Paragraph A. of ARTICLE V hereof,
during the lifetime of the Settlor the Trustees shall distribute
the Trust Fund or any part thereof to such one or more members of
the Appointed Class, on such terms and conditions, either outright
or in trust, as the Settlor may from time to time appoint by a
signed written instrument delivered to one or more of the Trustees,
with such instrument specifically referring to and exercising this
power of appointment.

E.   <u>Testamentary Power of Appointment</u>.  Subject to Paragraph
F. immediately below, and Paragraph A. of ARTICLE V hereof, upon
the death of the Settlor, the Trustees shall distribute the Trust
Fund or any part thereof to such one or more members of the
Appointed Class, on such terms and conditions, either outright or
in trust, as the Settlor may appoint by an instrument in writing
(including without limitation a Will or Codicil) signed by the
Settlor and delivered to the Trustees, specifically referring to
and exercising this power of appointment.

-8-

00027

F.   <u>Nature of Powers of Appointment</u>.   The powers of appointment set forth in Paragraphs D. and E. of this ARTICLE III are non-general, limited powers of appointment, and therefore, notwithstanding anything to the contrary herein contained, such power of appointment may not be exercised to any extent or in any manner in favor of the Settlor, the Settlor's estate, the Settlor's creditors, or the creditors of the Settlor's estate.

G.   <u>Provisions Following Settlor's Death</u>.

1.   Upon the death of the Settlor, the undistributed balance remaining in the Trust Fund (which for purposes hereof includes all assets that constitute the Trust Fund at the time of the Settlor's death, plus all benefits or assets payable to the Trust Fund by reason of the Settlor's death, as well as any property added to the Trust Fund by the Settlor's Last Will, but after making or providing for any other payments or distributions that may be set forth herein) that is not otherwise appointed by the Settlor shall be held, administered and distributed by the Trustees as follows:

a.   The Trustees shall hold, administer and distribute the Trust Fund for the benefit of the Settlor's brother, Dana Moore, if then living, pursuant to the provisions of this Paragraph G.  During Dana Moore's lifetime, he shall be the "Primary Beneficiary" (as further described in subparagraph G.1.c., below) of the Trust and references hereinbelow to the Primary Beneficiary's "sub-trust" or "separate trust" shall in that case refer to the entire Trust (or to the Exempt and Non-exempt Funds

-9-

00028

if created for Dana, Moore under subparagraph b. immediately below).

If Dana Moore is not then living, then the Trustees shall divide the Trust Fund into separate shares among Dana Moore's then-living Issue, by Right of Representation. Each share created for an Issue pursuant to this paragraph or created pursuant to subparagraph G.1.c.vi. of this ARTICLE III shall be distributed to a separate sub-trust that shall bear such Issue's name and be held for such Issue's benefit pursuant to the provisions of this Paragraph G.

b.  It is the Settlor's desire, which is precatory only and not intended to be binding on the Trustees, that if the property of a respective beneficiary's sub-trust would have an inclusion ratio (as defined in Code Section 2642(a) for generation-skipping transfer tax purposes) of neither one (1) nor zero (0), the Trustees consider dividing each such sub-trust into two separate sub-trusts to be created for the benefit of the respective beneficiary, so that one sub-trust, which shall bear such beneficiary's name and be designated the "Exempt Fund," shall have an inclusion ratio of approximately or exactly zero (0) (as defined in Code Section 2642(a) for generation-skipping transfer ("GST") tax purposes), and the other sub-trust, which shall bear such beneficiary's name and be designated the "Non-exempt Fund," shall have an inclusion ratio of approximately or exactly

-10-

00029

one (1). It is Settlor's desire that property should be allocated to and among such Exempt Funds in a manner intended to fully utilize that unused portion (as defined in Code Section 2632(b)(2)) of the Settlor's GST Exemption that has not been allocated to property that passed during the Settlor's lifetime, and that will not be allocated to other property passing by reason of the Settlor's death, and, further, as such unused portion is computed prior to allocating property to the Trust A Exempt Fund pursuant to subparagraph G.1.a. of this ARTICLE III. When allocating property to or among the respective beneficiaries' sub-trusts, the Trustees shall take into consideration the guidelines contained in Clause 5. of Schedule IX regarding methods to diminish or eliminate the application of the GST tax. In particular, the Trustees are authorized to fund each share created for a Child of Dana Moore primarily or exclusively with assets that are not exempt from the GST tax, and to fund each share created for any Issue of Dana Moore other than a Child of Dana Moore, if any, primarily or exclusively with assets that are exempt from the GST tax. The amounts and compositions of each of such sub-trust shall be determined in the Trustee's sole and absolute discretion, and property may be allocated pro rata or non-pro rata, in cash or in kind or partly in each, or in undivided interests.

-11-

c.   Each separate sub-trust created pursuant to this subparagraph G.1. shall (subject to the Trust Period) be held, administered and distributed as follows:

i.   The Trustees may pay to or apply for the benefit of the Issue for whom the separate sub-trust is named (hereinafter the "Primary Beneficiary") and the Primary Beneficiary's Issue so much of the net income and capital of the Primary Beneficiary's separate sub-trust, from time to time, as the Trustees, in the Trustees' discretion, deem necessary to provide for their health, education, support or maintenance. Any net income not distributed shall be treated in this sub-trust in accordance with Paragraph B. of this ARTICLE III.

With respect to the administration of, and distributions from, the Primary Beneficiary's separate sub-trust, the Trustees may take into consideration the goals as set forth in subparagraph G.1.c.iv. of this ARTICLE III and the guidelines as set forth in subparagraph G.1.c.v. of this ARTICLE III. If a Primary Beneficiary's separate sub-trust has been divided into an Exempt Fund and a Non-exempt Fund, then in making distributions the Trustees shall also take into consideration the distribution guidelines set forth in Clause 5. of Schedule IX.

-12-

00031

ii. In exercising the discretion conferred by subparagraph G.1.c.i. immediately above, the Trustees may pay more to or apply more for some beneficiaries than others and may make payments to or application of benefits for one or more beneficiaries to the exclusion of others if the Trustees shall deem this necessary or appropriate in light of the circumstances, the size of the trust estate, and the probable future needs of the beneficiaries. At the same time, the Trustees shall at all times keep in mind that it is the Settlor's desire that the separate sub-trust be considered as existing primarily for the benefit of the Primary Beneficiary thereof, and only secondarily for the benefit of the Primary Beneficiary's Issue and the takers of the remainder. The Trustees shall charge any payment or application of benefits pursuant to this subparagraph against the trust estate as a whole rather than against the ultimate distributive share of a beneficiary to whom or for whose benefit payment is made.

iii. The Primary Beneficiary shall have an inter vivos and a testamentary limited power of appointment over the assets in the respective sub-trust, to appoint the whole or any part thereof at any time and from time to time, on such terms and conditions, either outright or in trust, to or for the benefit of one or more or all of the group composed of the Issue and the spouse

-13-

00032

(except as limited below) of such Primary Beneficiary. This limited power of appointment shall be exercisable by the Primary Beneficiary by specific reference in the Primary Beneficiary's Will (including Codicils thereto) and/or by written instrument(s) from time to time delivered to the Trustees during such Primary Beneficiary's lifetime. Such power of appointment may not be exercised to any extent or in any manner in favor of the Primary Beneficiary, the Primary Beneficiary's estate, the Primary Beneficiary's creditors, or the creditors of the Primary Beneficiary's estate, or to any donee in satisfaction of a legal obligation of the Primary Beneficiary.

If, without regard to this subparagraph G.1.c.iii., any property in a Primary Beneficiary's separate sub-trust would be subject to the imposition of a generation-skipping transfer tax upon the death of the Primary Beneficiary, then the Primary Beneficiary shall have a testamentary general power to appoint all or any portion of such property to any person or persons or to any entity or entities, including such Primary Beneficiary's estate, as he or she may appoint; provided, however, that such general power of appointment may not be exercised in favor of the Primary Beneficiary's creditors, the creditors of the Primary Beneficiary's estate, or in satisfaction

-14-

of any legal obligation of the Primary Beneficiary. Notwithstanding the foregoing, the property to which such power of appointment shall extend shall not include any property that, if included in the taxable estate of the Primary Beneficiary, would be subject to a federal estate tax rate that is equal to or greater than the rate of tax that would otherwise be imposed upon such property pursuant to the generation-skipping transfer tax. For purposes of making the above comparison of rates of taxation, it shall be assumed that any such property is in addition to those assets otherwise included in the taxable estate of the Primary Beneficiary and will accordingly be subject to estate tax rates equal to or in excess of those rates that would otherwise be applicable to such taxable estate but for the operation of this paragraph. This testamentary general power of appointment shall be exercisable by the Primary Beneficiary by specific reference in the Primary Beneficiary's Will (including Codicils thereto). Notwithstanding anything to the contrary contained in the four immediately preceding sentences, the Trustees may in their sole discretion, and at any time and from time to time by written notification to the Primary Beneficiary, declare that such testamentary general power of appointment is thereafter, as to all or any portion of the property to which it

-15-

otherwise would, have applied under this paragraph, to be a limited power of appointment exercisable among only the Issue and the spouse of such Primary Beneficiary; provided, however, that any such written notification by the Trustees may be revoked in whole or in part by later written notification(s) by the Trustees to the Primary Beneficiary. Each decision by the Trustees to give a written notification to a Primary Beneficiary pursuant to the immediately preceding sentence shall be subject to the veto power of the Protector as set forth in Paragraph D. of ARTICLE VII hereof, except that if the Primary Beneficiary is at such time the sole Protector, then the Protector shall not have such veto power, and if the Primary Beneficiary is a member of a Committee of Protectors, then the Primary Beneficiary shall under no circumstances participate as a member of such Committee in any decision to exercise or not to exercise such veto power. If any estate, inheritance or other death taxes are payable by reason of such Primary Beneficiary's death as the result of the inclusion of all or any portion of the unappointed property of such Primary Beneficiary's separate sub-trust in such Primary Beneficiary's gross estate due to the existence of this general power of appointment, the Trustees shall pay to the executors, personal representatives, or administrators of such Primary

-16-

00035

Beneficiary's estate from the remaining unappointed property of such Primary Beneficiary's separate sub-trust the difference between the amount of such taxes that are payable with respect to such unappointed property and the amount of such taxes that would be payable if such Primary Beneficiary did not possess this general power of appointment over such unappointed portion of his or her separate sub-trust, unless such Primary Beneficiary shall direct otherwise in his or her Will.

iv. In exercising the discretion given to the Trustees over the management, distributions and investments of a Primary Beneficiary's sub-trust, the Trustees shall take into account the Settlor's goals:

(a) the Settlor desires to benefit the beneficiaries while attempting to protect trust property from the claims of creditors (including, but without limitation, possible claims from spouses, ex-spouses and governmental agencies);

(b) the Settlor desires to reduce or eliminate wealth transfer taxes on assets of the separate sub-trust; and

(c) the Settlor desires to help the beneficiaries of the separate sub-

-17-

00036

trust reduce or eliminate their own income and wealth transfer taxes.

v.   In furtherance of the Settlor's goals, as set forth in subparagraph G.1.c.iv. immediately above, the Trustees shall take into account the following guidelines:

(a)   The Trustees are encouraged to provide the beneficiaries of the separate sub-trust with the liberal "use" and "enjoyment" of the separate sub-trust assets rather than to make a distribution of trust assets to the beneficiaries. The Settlor intends, to the extent their own means of support are adequate, that the trust beneficiaries generally should provide for their own living expenses and purchase their own depreciable or consumable property. Therefore, consideration should first be given to the advisability of: (i) the Trustees acquiring assets for the "use" and "enjoyment" of the separate sub-trust beneficiaries; and (ii) the beneficiaries using their own assets and resources for living expenses, consumables and the acquisition of depreciable properties, in order to reduce the amount of the taxable estates of such beneficiary or beneficiaries and thereby minimizing the amount of the future transfer taxes of such beneficiaries.

-18-

(b)    The Trustees may allow a beneficiary (or beneficiaries) to have the right to the use, possession and enjoyment of tangible personal property at any time held by the separate sub-trust and real property that may at any time constitute an asset of the separate sub-trust and that can be occupied or used by a beneficiary (or beneficiaries) for residential purposes, whether as a primary residence, seasonal residence or otherwise. Such use, possession and enjoyment may be without rent or other financial obligation and the Trustees, in the Trustees' sole discretion, may see to the timely payment of all taxes, insurance, maintenance and repairs, safeguarding and other charges related to the preservation and maintenance of each and every such property.

(c)    The Trustees may take into account both immediate and future income and transfer tax consequences in determining whether to make distributions. For example, on one hand, income tax planning may suggest that a distribution be made because of a beneficiary's lower income tax bracket; on the other hand, such a distribution may have transfer tax consequences and diminish the leveraging of the separate sub-trust

-19-

assets over successive generations. Further, the Trustees might consider whether it is beneficial to make a distribution on behalf of a beneficiary who otherwise would not be able to take full advantage of his or her estate tax unified credit or generation-skipping transfer tax exemption.

(d)    The Trustees may consider acquiring non-traditional investments such as art work, jewelry, or vacation homes, which have significant appreciation potential and "use" value.

vi.    Each separate sub-trust created pursuant to subparagraph G.1.a. of this ARTICLE III, or created pursuant to this subparagraph G.1.c.vi., for a Primary Beneficiary shall terminate upon such Primary Beneficiary's death. Upon the termination of a Primary Beneficiary's separate sub-trust, the remaining unappointed balance of such sub-trust shall be divided into separate shares among such Primary Beneficiary's then living Issue, by Right of Representation. Each share so created for an Issue shall be held, administered and distributed pursuant to this subparagraph G.1.c., and each such respective Issue shall be considered the "Primary Beneficiary" thereof.

-20-

If the Primary Beneficiary is not survived
by any of such Primary Beneficiary's
Issue, then the remaining unappointed
balance of such Primary Beneficiary's
separate sub-trust shall be divided into
shares, by Right of Representation, among
the then living Issue of that lineal
ancestor of such Primary Beneficiary who
(i) has then living Issue, (ii) is either
Dana Moore or an Issue of Dana Moore, and
(iii) is in the closest generation to that
of the Primary Beneficiary of any lineal
ancestor who satisfied (i) and (ii) of
this sentence. Each share so created for
an Issue shall be held, administered and
distributed pursuant to this subparagraph
G.1.c., and such Issue shall be considered
the "Primary Beneficiary" thereof;
provided, however, that if such Issue is
then currently a Primary Beneficiary of a
separate trust created pursuant to this
subparagraph G.1., then such property
shall instead be added to such already
existing separate trust and shall
thereafter be administered according to
its terms.

d.    In the event that any part of any share or sub-
trust created pursuant to this Paragraph G.
cannot be disposed of as otherwise provided
herein, such property, or such part that is not
effectively disposed of, shall be distributed
to those persons then living who would have
been the Settlor's heirs had the Settlor died,
not survived by a spouse, ninety (90) days

-21-

00040

after the occurrence of the event requiring the distribution, their identities and respective shares in each case to be determined according to the law of intestate succession as it then exists in the State of California.

e.   Unless sooner terminated in accordance with the provisions of this Settlement, each trust or sub-trust created under this Settlement shall terminate at the end of the Trust Period.  Upon termination, the balance remaining in each respective trust or sub-trust shall be distributed to the Primary Beneficiary thereof, or if there is no such Primary Beneficiary, then in accordance with subparagraph d. immediately above.

2.   Notwithstanding anything to the contrary set forth in this Paragraph G., in the event that any stock is held in any trust or sub-trust hereunder in a corporation that has in force an election to be treated as an S corporation pursuant to Code Section 1361 or for which such an election is then being made, and the Trustees believe, in their sole discretion, that it is in the best interests of the pertinent beneficiaries hereunder that such election remain in force or be made, as the case may be, then the Trustees may in their sole discretion (i) make an appropriate election to qualify such trust as an "electing small business trust" under Code Section 1361(e)(3) (if such trust would otherwise qualify under Code Section 1361(e)(1)) or (ii) if such stock would be held in any trust or sub-trust hereunder that would otherwise cease to be a "permitted shareholder" within the meaning of Code Section

-22-

00041

1361(c)(2) other than Code Section 1361(c)(2)(A)(ii)
regarding an electing small business trust
(hereinafter a "Non-Qualifying Trust"), then such
stock shall be distributed to a separate trust or
sub-trust (or to a separate share within the Non-
Qualifying Trust, if and as permitted pursuant to
Code Section 1361) with provisions identical to
those of the Non-Qualifying Trust except as provided
below (hereinafter each such separate trust (or
separate share, if applicable) to be referred to as
the "Qualifying Trust").    It is the Settlor's
intention that the Qualifying Trust shall qualify to
be treated as a Qualified Subchapter S Trust
pursuant to Code Section 1361(d).

If a respective Non-Qualifying Trust has more than
one current income beneficiary, all S corporation
stock held by such Non-Qualifying Trust shall be
divided into as many equal shares as shall be
necessary to create one such share for each then
living beneficiary of such Non-Qualifying Trust who
is assigned to that generation to which the eldest
of all of such beneficiaries is assigned pursuant to
the provisions of Code Section 2651, and each such
share shall be distributed to a Qualifying Trust
that shall be created for the benefit of the
beneficiary for whom such share was set aside.

Each Qualifying Trust shall have provisions
identical to the Non-Qualifying Trust in which such
stock would have otherwise been held, except that:

a.    All of the income of such Qualifying Trust
      (within the meaning of Code Section 643(b))
      shall be distributed to the primary beneficiary

-23-

00042

thereof (hereinafter the "current income beneficiary") at least quarter-annually for the taxable year of the Qualifying Trust or for that part of the Qualifying Trust's taxable year during which it holds S corporation stock;

b.   No distribution of corpus from the Qualifying Trust may be made to any individual other than the current income beneficiary during the lifetime of the current income beneficiary;

c.   No one shall have any power to appoint any portion of the Qualifying Trust's property to anyone other than the current income beneficiary during the lifetime of the current income beneficiary;

d.   Upon the termination of the Qualifying Trust during the lifetime of the current income beneficiary, the Qualifying Trust shall distribute all of its assets to such beneficiary;

e.   No distribution shall be made to the current income beneficiary that satisfies a legal support obligation owed by a Settlor to such beneficiary;

f.   Upon the death of a Qualifying Trust's income beneficiary, such trust shall once again become subject to all of the terms and provisions of this subparagraph G.2. including, but not limited to, the power and authority of the Trustees to make an appropriate election to qualify such trust as an "electing small

-24-

business trust" under Code Section 1361(e)(3)
(if such trust would otherwise qualify under
Code Section 1361(e)(1)); and

g.   In the event that any other requirements are
imposed on a trust or share by the Internal
Revenue Code or the pertinent Treasury
Regulations in order to make such trust or
share eligible for treatment as a Qualified
Subchapter S Trust, such separate trust or
share shall meet such other requirements.

To the extent allowable pursuant to the pertinent
Code Sections and Treasury Regulations, the
Trustees, in the Trustees' sole and absolute
discretion, are authorized to enter into such stock
purchase, voting or other agreements as the
Trustees, in the Trustees' sole and absolute
discretion, shall determine to be necessary or
appropriate for the protection of the Qualifying
Trust, the shareholders of the S corporation and/or
the deemed shareholders of the S corporation.
Notwithstanding the foregoing, if the Trustees
believe, in their sole discretion, that it is in the
best interests of the pertinent beneficiaries
hereunder that a corporation's S election not be
kept in force, then the Trustees may take whatever
steps they deem reasonable to effect a revocation of
such election.

The Settlor directs the Trustees to consider
creating Qualifying Trusts as separate shares
instead of as separate trusts, to the extent
permitted pursuant to Code Section 1361 and to the
extent considered advisable by the Trustees, in the

-25-

Trustees' sole discretion.  The Trustees are also advised to pay careful attention to S election requirements and deadlines.  New S elections may be required, for instance, at the Settlor's death or upon the death of a Qualifying Trust's income beneficiary.

Notwithstanding anything to the contrary set forth in this Settlement, the Trustees shall have the power and authority to make such conforming alterations, additions or deletions, in or to the powers, discretions or provisions of this Settlement as the Trustees consider necessary or desirable in their sole and absolute discretion to ensure that any separate trust or sub-trust shall meet the requirements of an electing small business trust under Code Section 1361(e)(1) and the Trustees shall incur no liability by reason of any adverse consequence of such decisions to any person or entity whomsoever.

H..  <u>Distribution at Termination of Trust Period</u>.  Subject always to the provisions of Paragraphs D. and E. of this ARTICLE III relating to powers of appointment and Paragraph G. of this ARTICLE III relating to the terms of this Settlement that will apply upon the Settlor's death, at the expiration of the Trust Period, the Trustees shall stand possessed of the Trust Fund and any sub-trust thereof upon such trusts for the benefit of the members of the Appointed Class or any one or more of them exclusive of the other or others, in such shares and proportions if more than one, and generally in such manner as the Trustees shall prior to or on the date of such expiration in their absolute discretion appoint, but without infringing any rule against perpetuities applicable hereto.  In default of and subject to any such appointment as aforesaid the Trustees shall at the expiration of

-26-

the Trust Period stand possessed of the Trust Fund and any sub-trust thereof for such of the Beneficiaries as are then living or any one or more of them in such shares as the Trustees shall prior to the end of the Trust Period appoint.  In default of such appointment, the undistributed balance (if any) remaining of the Trust Fund or any sub-trust thereof shall be distributed to the respective then income beneficiaries thereof in the proportions in which they are, at such time, entitled to receive the income. However, if the rights to income are not then fixed, distribution under this ARTICLE III, Paragraph H. shall be made to the Settlor, and should the Settlor not then be living, by Right of Representation to the Settlor's Issue who are then entitled or authorized in the Trustees' discretion to receive income payments, or, if there are no such Issue, to the Settlor's brother, Dana Moore, or if Dana Moore is not then living, in equal shares to the Beneficiaries who are then entitled or authorized to receive income payments, and if there are no such Beneficiaries, the undistributed balance then remaining in the Trust Fund shall be distributed to those persons then living who would have been the Settlor's heirs had the Settlor died without a living spouse ninety (90) days after the occurrence of the event requiring such distribution to be made, their identities and respective shares to be determined according to the law of intestate succession as it then exists in the State of California.

Notwithstanding the foregoing, at the expiration of the Trust Period the undistributed balance of capital and net income remaining in any sub-trust or separate trust created hereunder for which there is only one (1) income beneficiary shall be distributed in full to such beneficiary.

-27-

00046

ARTICLE IV

Trustees

A.   Appointment of Successor Trustees.   If any of the Trustees shall, for any reason, fail to qualify or cease to act as a Trustee, then the person or persons specified in Schedule V attached hereto and incorporated herein by this reference, in order of priority as therein set forth, may by a signed declaration in writing appoint one or more other persons to serve as successor; subject, however, to any exclusions or provisions which may be specified in Schedule V.   Subject to such possible exclusions or provisions, successor Trustees may be resident or domiciled anywhere in the world.   In no event may the Settlor serve as a Trustee. Furthermore, notwithstanding any other provisions herein, so long as any member of the Appointed Class serves as a Trustee hereof, such Trustee shall be deemed for purposes of this Settlement as not being a member of the Appointed Class during the Settlor's lifetime.

B.   Removal of Trustees and Additional Trustees.   The person who for the respective time shall have the power to appoint successor Trustees hereof shall, subject to any exclusions or provisions which may be specified in Schedule V, have the power to remove any Trustee hereof, and shall have the power to appoint one or more other persons, wheresoever resident or domiciled in the world, to be an additional Trustee hereof.

Further, upon the happening of any of the events enumerated hereinbelow in this Paragraph B., the Trustees who reside in or are domiciled in a given country shall have the power and authority to remove from office one or more of the Trustees who reside in or are domiciled in another given country wherein the event has occurred, with no powers, authorities, benefits or discretions of the Trustees so removed surviving such removal, and thereupon the Trustees so removed shall be divested of the title to any assets

-28-

belonging to the Trust Fund.  The enumerated events are as follows:
War, invasion, or revolution; confiscation or expropriation of
assets, either with or without "compensation"; the termination of
exchange control regulations favorable to the Trust Fund or the
implementation of exchange control regulations unfavorable to the
Trust Fund; the mandatory liquidation or dissolution of existing
Trustees; the mandatory replacement of existing Trustees or the
placing of limitations on the powers of Trustees other than in
accordance with the terms or provisions hereof; devaluation or
inconvertibility of the currency in which Trust Fund assets are
held; serious governmental threat to the ownership or free transfer
of private property by citizens of the jurisdiction; the threat of
or the actual suspension or abrogation in whole or in part of this
Settlement, or any contract with a party involved in the Trust;
compulsory conversion of the Trust Fund assets into the currency of
the jurisdiction; the threat of or the actual compulsion of the
Trustees to sell, transfer or otherwise dispose of Trust Fund
assets in a manner inconsistent with the terms and provisions of
this Settlement.

Removal pursuant to this power shall be effective immediately
upon notice thereof to the Trustee so removed, or to the Protector.
In such event, the Trustees exercising this power (which may only
be exercised by their unanimous action if there shall be more than
one (1) such Trustee) shall have the sole power and authority to
designate the successor or successors to the Trustee or Trustees
who are so removed, or to otherwise determine in their sole and
absolute discretion that there shall, for the time being or for any
time, not be a successor or successors in office to the Trustees so
removed.

C.  <u>Resignation of Trustees</u>.  Any Trustee may resign by
giving prior written notice to the person having for the respective
time the power to appoint successor or additional Trustees hereof.
Such written notice shall be signed by the resigning Trustee

-29-

00048

himself, or in the case of a corporate Trustee by any of its duly
appointed officers or directors.    Upon the posting or personal
delivery of said notice the Trustee resigning shall cease to be a
Trustee hereof for all intents and purposes, except for such acts
or deeds as may be reasonably necessary for the proper vesting of
the Trust Fund in the continuing or successor Trustees or otherwise
as the case may require.

Notwithstanding the foregoing provisions of this ARTICLE IV,
Paragraph C., if at any time there is only one (1) Trustee
remaining in office, then such remaining Trustee may not resign,
and no attempted resignation shall be effective, until such time as
the remaining Trustee's successor in office takes and accepts
office as a Trustee hereunder.

D.    Expenses of Removal, Addition, or Succession of Trustees.
All expenses or costs incurred in connection with the removal,
addition or succession of Trustees shall be borne by the Trust
Fund.    An outgoing Trustee who is liable as a Trustee or former
Trustee hereof for any taxes or like charges (wherever imposed and
of whatever nature) shall be entitled to reasonable security for
being indemnified as to such liability.

E.    Power of Attorney.    Each Trustee hereby irrevocably
grants the Protector its power of attorney, for the purpose of
executing any document transferring title of any asset belonging to
the Trust Fund from him to the new Trustee, on his resignation or
removal as a Trustee.    Such power may be exercised by the Protector
without notice to the Trustee provided that this power of this
ARTICLE IV shall not be exercised unless a release and indemnity
has been completed in accordance with Paragraph M. of this ARTICLE
IV.

F.    Powers of Successor or Additional Trustees.    Subject to
the requirements of the Applicable Law, in addition to the powers,

-30-

00049

rights, benefits and discretions granted hereunder, any successor or additional Trustee appointed to this Settlement shall have such powers, rights, benefits and discretions as may be agreed to in writing between such new or additional Trustee and the person making the appointment.

G.   <u>Memorandum of Change in Trustees</u>.  Upon there being any change in Trustees, a memorandum shall be endorsed on or permanently affixed to this Settlement wherein the names of the Trustees for the time being shall be set forth.  The memorandum shall be signed by the persons so named.  Anyone dealing with the Trust Fund or this Settlement shall be entitled to rely upon such memorandum as sufficient evidence that the Trustees named therein are the duly constituted Trustees for the time being.  In the case of there being more than one memorandum, anyone dealing with the Trust Fund or this Settlement shall be entitled to rely upon the memorandum which is most recent in time.

H.   <u>Actions of Corporate Trustee</u>.  Any corporate Trustee or trust company shall have the power and authority to act by and through its duly appointed and proper officers or directors.

I.   <u>Limitation on Liability</u>.  No successor or additional Trustee shall be liable or responsible for any act or default of any predecessor Trustee or for any loss or expense resulting from or occasioned by anything done or neglected to be done in the administration of the Trust Fund prior to becoming a Trustee, nor shall it be required to inquire into or take notice of the prior administration of the Trust Fund.

The Trust Fund primarily, and the Settlor secondarily, shall indemnify and hold harmless the Trustees and any persons (other than the Settlor and others who may have a beneficial interest herein) with respect to any cost, obligation, liability or the like which the Trustees or such other persons may suffer by reason of

-31-

00050

being involved in the formation, funding, operation or administration of this Settlement of Trust. The foregoing shall be inapplicable to any cost, obligation, liability or the like which is the result of the respective Trustee's or person's own gross negligence or intentional misconduct. Payment of the cost, obligation or liability need not be made by the obligor before this requirement of indemnification is satisfied.

J.    <u>Liability of Trustees for Breaches of Trust</u>. No Trustee hereof purporting to act in the exercise of the trust and power hereof shall be liable for any loss not attributable either to his dishonesty or to the wilful commission or omission of an act known by him to be a breach of trust, and no director of a company which is one of the Trustees hereof shall be liable for any loss not attributable either to the dishonesty of that director or to the wilful commission or omission of an act known by that director to be a breach of trust; and in particular no such person nor any such director shall be bound to take any proceedings against a co-trustee or co-director for any breach or alleged breach of trust committed by that co-trustee or co-director not involving the dishonesty of that co-trustee or co-director.

K.    <u>Special    Restrictions    on    Trustee    Liabilities</u>. Notwithstanding any rule of law or equity or any term of this instrument to the contrary:

    1.    Where any Trustee is purporting to act in the exercise of the trusts and powers in relation to any Scheduled Investment, neither that Trustee nor any of its officers shall be liable for any loss or liability unless that loss or liability is attributable to the wilful dishonesty or wilful fraud of that Trustee or that officer.

-32-

00051

2.   No Trustee shall be liable for any losses or
     liabilities howsoever occurring resulting from any
     act or omission (whether wilfully fraudulent, or
     wilfully dishonest or grossly negligent, or
     otherwise) of any solicitor, attorney, agent,
     banker, accountant, auditor, stockbroker,
     investment advisor, or other agent or power of
     attorney employed or appointed in good faith by
     such Trustee.

3.   In the event that there is more than one Trustee, a
     co-Trustee shall not be liable for any losses or
     liabilities howsoever occurring resulting from any
     act or omission (whether wilfully dishonest,
     wilfully fraudulent, or grossly negligent, or
     otherwise) of any other co-Trustee.

4.   No Trustee shall be liable for any loss howsoever
     occurring resulting from the Trustee exercising his
     powers to the benefit of any personal relation of a
     Beneficiary (whether that personal relation be a
     Beneficiary or not) with or without the concurrence
     of any or all of the Beneficiaries.  Such defense
     raised by the Trustee shall be a complete defense
     to any action arising from such breach and brought
     by any existing, contingent or future Beneficiary.

5.   Where any asset included in the Trust Fund is found
     not to have been properly transferred into the
     Trust Fund, or if properly transferred such
     transfer is subsequently avoided, then no Trustee
     shall be liable  to any person or entity claiming
     the return or reconveyance of that property for any
     loss suffered by virtue of the fact the Trustee has

-33-

00052

already exercised any of the trusts or powers hereof in relation to that property.

L. <u>Indemnity</u>. The Trustees shall be indemnified out of the Trust Fund against all liabilities incurred by them in the professed exercise of the trusts and powers hereof, and shall have a lien on the Trust Fund for such indemnity. This indemnity shall cover the legal costs to the Trustees of defending any claim for liability, as such costs are incurred. The foregoing shall be inapplicable only if the final decision of the Courts in the jurisdiction where the Trust was domiciled at the time the breach of trust giving rise to the action occurred is that any Trustee did act in the matter which has given rise to the loss or liability in a manner which would disqualify him from the protection from liability or loss contained in Paragraphs I., J. and K. of this ARTICLE IV.

M. <u>Release of Trustee</u>. If a Trustee ceases to be a Trustee hereof, for whatever reason, such Trustee shall be released from all claims, demands, actions, proceedings, and accounts of any kind on the part of any person (whether in existence or not) who is actually or prospectively interested under this Settlement for or in respect of the Trust Fund or this Settlement for any act or thing done or omitted with respect to the Trust Fund or this Settlement. Excepted from the foregoing is any action of any Trustee which would disqualify him from protection under Paragraphs I., J. and K. of this ARTICLE IV, or actions to recover from such Trustee Trust Fund property or the proceeds of Trust Fund property in the possession of such Trustee or previously received by such Trustee (or, in the case of a corporate Trustee or trust company, any of its officers or directors) and converted to his use. The Trustee shall be entitled to receive such a release and indemnity prior to his executing a transfer of title of any assets belonging to the Trust Fund into the name of the new Trustee.

-34-

00053

N.   <u>Trustee Compensation</u>.   Any Trustee who shall be an individual engaged in any profession or business shall be entitled to charge and be paid all usual professional or other charges for business done, time spent and services rendered by him or his firm or his office in carrying out his duties hereunder, whether in the ordinary course of his profession or business or not, and whether or not of a nature requiring the employment of such a professional person.   Any such person shall be entitled to retain any commission or brokerage received by him or his firm or his office in connection with any investment or change of investment, or any insurance effected by the Trustees.

Any Trustee which shall be a company authorized to undertake trust business shall be entitled, in addition to reimbursement for its proper expenses, to remuneration for its services in accordance with such company's published terms and conditions for trust business in force from time to time.

No Trustee hereof or director or other officer of any company which is a Trustee hereof shall be liable to account for any remuneration or other profit received by him in consequence of his acting as or being appointed to be a director or other officer or servant of any company, even though his appointment was procured by an exercise by him or by the Trustees of voting rights attached to securities in the Trust Fund or by an abstention from exercising such voting rights.

Subject to the other provisions hereof, the Trustees shall be entitled to reasonable compensation commensurate with the services actually performed, and to prompt reimbursement for expenses properly incurred.

O.   <u>Custodian Trustee</u>.   The person who for the respective time shall have the power to appoint successor Trustees hereof shall have power to appoint any one of the existing Trustees to be

-35-

a Custodian Trustee in terms of Section 19F of the International
Trusts Act 1984, as amended, as in force in the Cook Islands. Upon
such appointment being made, the Trustees may at any time or times
thereafter by deed make such consequential changes in or additions
to or deletions from the powers and provisions of this deed as such
Trustee shall be advised on taking legal advice as necessary or
desirable to give full force and effect to such appointment.

### ARTICLE V
### Administrative and Protective Provision

A. <u>Freedom From Outside Interference</u>. Settlor directs that
this Settlement be administered consistent with its terms, free of
judicial intervention and without order, approval, or other action
of any court. To the extent any person is granted the power
hereunder to compel any act on the part of one or more of the
Trustees, or has the authority to render advice to one or more of
the Trustees, or to otherwise approve or compel any action or
exercise any power which affects or will affect this Settlement,
each Trustee is directed, to the extent the respective Trustee then
in office would not be subject to personal liability or personal
exposure (for example, by being held in contempt of court or other
such sanction by a  court having jurisdiction over the respective
Trustee): (i) to accept or recognize only instructions or advice,
or the effects of any approval or compelled action or the exercise
of any power, which are given by or are the result of persons
acting of their own free will and not under compulsion of any legal
process or like authority; and (ii) to ignore any advice or any
directive, order, or like decree, or the results or effects
thereof, of any court, administrative body or any tribunal
whatsoever or of past or present Trustees, of any Protector
hereunder, or of any other person, where (a) such has been
instigated by directive, order, or like decree of any court,
administrative body or other tribunal, or where (b) the person
attempting to compel the act, or attempting to exercise the

-36-

00055

authority to render advice, or otherwise attempting to compel any action or exercise any power which affects or will affect this Settlement, is not a person either appointed or so authorized or the like pursuant to the terms and conditions of this Settlement.

B.    Spendthrift Provision.  Subject to the Applicable Law, no beneficiary or member of the Appointed Class, or any other person with any rights hereunder shall have any right, power, or authority to sell, assign, pledge, mortgage or in any other manner to encumber, alienate or impair all or any part of his interest in the Trust Fund or otherwise under this Settlement.  The beneficial and legal interest in, and the capital and income of, the Trust Fund and every part of it shall be free from interference or control of any creditor of any beneficiary or member of the Appointed Class, and shall not be subject to the claims of any such creditor, including claims for the payment of alimony, nor liable to attachment, execution, bankruptcy, or any other legal or equitable process.  No creditor of any beneficiary or any member of the Appointed Class shall be entitled to obtain an order for attachment of the Trust Fund or any part thereof either by way of execution, in bankruptcy proceedings or otherwise.  No benefit devolving on any beneficiary or any member of the Appointed Class under this Settlement shall be subject to seizure, attachment or lien by any creditor.  Where the Trustees are authorized to appoint, pay, appropriate, or apply any capital or income of the Trust Fund to or for the benefit of any person who is an infant, the Trustees may either pay the same to him as his absolute property notwithstanding that he is an infant (with the receipt of any such infant beneficiary or member of the Appointed Class being a good discharge to the Trustees therefor), or pay the same to any parent or guardian of such infant, or apply the same in such manner as may be directed in writing by such parent or guardian.  The receipt of such parent or guardian in either case shall be a sufficient discharge to the Trustees for any capital or income so paid or applied.  The receipt of the person who professes to be the

-37-

treasurer or other proper officer or director for the time being of
any charity to which any part of the capital or income of the Trust
Fund shall become payable, transferable, or applicable under the
provisions hereof shall be a good discharge to the Trustees with
respect thereto.

C.    <u>Permissible Factors in Trustees' Exercise of Discretion</u>.
Whenever the Trustees are given the discretion to pay income
(whether accumulated or current) and/or capital of the Trust Fund
to one or more of the Beneficiaries or members of the Appointed
Class, the Trustees, in their discretion, may, but need not, take
into consideration any of the payee's other income or resources
known to the Trustees, or otherwise take into account the payee's
overall financial status.

D.    <u>Limitation on Obligation to Undertake Litigation to
Collect Death Benefits</u>.  Upon the Settlor's death the Trustees
shall collect any and all death benefits then payable to the
Trustees.    The Trustees shall not be obligated to undertake
litigation for collection of any benefits or assets payable by
reason of the Settlor's death, including, but not limited to, such
benefits under life insurance policies, employee benefit plans or
other contracts, plans or arrangements providing for payment or
transfer at death which are payable to the Trustees, unless they
are indemnified to their satisfaction against any liability for the
expense of such litigation.  Payment to the Trustees or any one of
them and the receipt by the Trustees or any one of them, or the
release by the Trustees, shall fully discharge any payor and no
payor need inquire into or take notice of the deceased's Will or
this Settlement, or see to the application of such payment.
Notwithstanding anything in the Settlor's Will to the contrary, any
benefits or assets payable by reason of the Settlor's death which
are payable to the Trust Fund shall not be subject to the claims
against the Settlor or the Settlor's estate, nor shall such
benefits be subject to the control of the Settlor's executor or

-38-

other personal representative, nor shall such be included in the property administered as part of the Settlor's estate.

E.    <u>Delegation by Trustees</u>.    Except as may otherwise be provided herein, any Trustee may by a signed declaration in writing, revocable during the Trust Period or irrevocable, delegate to any other person other than the Settlor, but including delegation from one Co-Trustee to another Co-Trustee, the exclusive or non-exclusive exercise of any of the specific powers, discretions, or authorities conferred upon the delegating Trustee by this Settlement or by law; provided, however, that each and every limitation hereunder on the power and authority of a Trustee shall apply to the delegatee in the same manner and in all respects as if the delegatee were a Trustee.    The delegating Trustee shall provide a copy of the writing to each other Trustee then in office. While any delegation is in effect any of the powers, discretionary or otherwise, so delegated may be exercised and action may be taken with the same force and effect as if the delegating Trustee had personally joined in the exercise of such power and the taking of such action.    Anyone dealing with such delegated person shall be absolutely protected in relying upon the written statements of such Trustee.

In the course of any such delegation the Trustees may delegate their powers to deal with any item or class of items identified as a Scheduled Investment to any person or entity without inquiry or concern as to whether such person or entity is honest, or has any skill, experience or qualification to exercise those powers properly, and without any duty to review the performance of such person's activities or the ongoing financial status of the item or class of items.

F.    <u>Revisions of Interests</u>.    During the Settlor's lifetime, the Trustees may, by a signed declaration in writing, declare that the person or persons or members of a class named or specified

-39-

(whether or not ascertained in such declaration) who are, would be or might be or become (but for this Paragraph F.) a Beneficiary or a member or members of the Appointed Class (as the case may be): (i) shall be partially excluded from future benefit hereunder; (ii) shall cease to be a Beneficiary or a member or members of the Appointed Class (as the case may be); or (iii) shall be an Excluded Person or Excluded Persons. Any such declaration may be revocable during the Trust Period or irrevocable and shall have effect from the date specified in the declaration.

During the Settlor's lifetime, the Trustees may, by a signed declaration in writing, revocable at any time or times during the Trust Period or irrevocable, add to the Appointed Class any person or persons or class or classes of persons other than an Excluded Person or Excluded Persons (other than one or more or all of the Trustees or their respective estates, creditors or creditors of their estates) provided that the persons so added are at the time related by blood or marriage to at least one of the members of the Appointed Class. Any such addition so made shall name or describe the person or persons or class or classes of persons to be thereby added to the Appointed Class, and shall specify the date (not being earlier than the date of the declaration but during the Trust Period) from which such person or persons or class or classes of persons shall be so added and the period (if terminating before the end of the Trust Period) for which he or they shall be added.

G.  <u>Disclaiming of Interest</u>.  Any person of full age to whom or for whose benefit any capital or income of the Trust Fund may be liable to be appointed, paid, appropriated, transferred or applied in any manner whatsoever, directly or indirectly, by or in consequence of an exercise of any trust power or discretion vested hereunder in the Trustees, or in any other person, may by declaration in writing signed by him and received by the Trustees during the Trust Period, either revocably during the Trust Period only, or irrevocably: (i) disclaim his interest as an object of

-40-

00059

such trust power or discretion, either wholly or with respect to any specified part or share; (ii) cease to be a Beneficiary or member of the Appointed Class (as the case may be); or (iii) declare that he shall be an Excluded Person. Such declaration shall have effect from the date that the same is received by one of the Trustees.

In the event of any disclaimer of any interest in any trust created hereunder, the property disclaimed shall be disposed of in the manner provided herein as though the disclaimant had failed to survive the Settlor or other designated person.

H. _Disregarding Interests of Others_. The Trustees, in exercising any of the powers, authorities or discretions hereby conferred in favor of any particular person, are hereby expressly authorized to disregard entirely the interests of any other person who is interested or who may become interested hereunder. Without limiting the generality of the foregoing, no appointment, payment, appropriation, application, transfer or advancement made in exercise of any power herein contained shall be invalid on the grounds that either: (i) an insubstantial, illusory, or nominal share is appointed to any one or more objects of such power, or is left unappointed; or (ii) any object of such power is thereby wholly or partially, revocably or irrevocably excluded.

I. _Change in Applicable Law_. The Trustees may by a signed declaration in writing, at any time or times and from time to time, during the Trust Period, as they deem advisable in their discretion for the benefit or security of this Trust Fund or any portion hereof, remove (or decline to remove) all or part of the assets and/or the situs of administration thereof from one jurisdiction to another jurisdiction and/or declare that this Settlement shall from the date of such declaration take effect in accordance with the law of some other state or territory in any part of the World and thereupon the courts of such other jurisdiction shall have the

-41-

power to effectuate the purposes of this Settlement to such extent. In no event, however, shall the law of some other state or territory be any place under the law of which: (i) substantially all of the powers and provisions herein declared and contained would not be enforceable or capable of being exercised and so taking effect; or (ii) this Settlement would not be irrevocable. From the date of such declaration the law of the state or territory named therein shall be the Applicable Law, but subject always to the power conferred by this Paragraph I. of this ARTICLE V and until any further declaration be made hereunder. So often as any such declaration as aforesaid shall be made, the Trustees shall be at liberty to make such consequential alterations or additions in or to the powers, discretions and provisions of this Settlement as the Trustees may consider necessary or desirable to ensure that the provisions of this Settlement shall (_mutatis mutandis_) be so valid and effective as they are under the Applicable Law governing this Settlement at the time the power contained herein is exercised. The determination of the Trustees as to any such removal or change in Applicable Law shall be conclusive and binding on all persons interested or claiming to be interested in this Settlement.

J.   <u>Change in Certain Provisions</u>.   During the Settlor's lifetime, the Trustees shall have the power and authority to make any alterations, additions or deletions, of whatever nature or manner, to the provisions hereof which they consider in their sole and absolute discretion to be for the benefit or in the interests of one, more or all of the members of the Appointed Class. During the Settlor's lifetime the Trustees also shall have the power and authority to make such technical or conforming alterations or additions in or to the powers, discretions or provisions of this Settlement as the Trustees may consider necessary or desirable to complement the overall estate plan of the Settlor, including the effectuation of overall tax savings for the Settlor and the Settlor's estate, and including the maximization of the Trust Fund and the sub-trusts thereof through planning towards the

-42-

minimization of taxation.   In furtherance of the foregoing, the
Trustees shall have authority to invade the capital of any
sub-trust created hereunder having (for United States generation
skipping tax purposes) an inclusion ratio greater than zero in
order to make distributions of all or any amount or portion of the
capital of such sub-trust that serve tax planning purposes.   This
power to invade shall extend to situations where a transfer tax
savings would be realized by exposing trust capital to United
States federal gift or estate tax rather than the generation
skipping tax.

As an inducement to the Trustees to exercise the powers
granted hereunder, Settlor hereby directs that the Trustees'
decisions under this Paragraph J., ARTICLE V shall be absolutely
binding on all Beneficiaries and members of the Appointed Class and
the respective distributee's estate; that the Trustees shall incur
no liability by reason of any adverse consequence of such decisions
to any person whomsoever.

K.   <u>Change in Trust Period</u>.   During the Settlor's lifetime,
the Trustees may, by a signed declaration in writing, declare that
the Trust Period shall be determined in relation to either: (i) the
whole of the capital and/or the income of the Trust Fund (excluding
accumulations of income that have not been added to the Trust Fund
as an accretion thereto); or (ii) any part or parts thereof.   The
foregoing is to the intent that the capital and/or said income of
the Trust Fund (or part or parts thereof, as the case may be),
shall be held upon the trusts and subject to the powers and
provisions upon and subject to which the same would then be held if
the Trust Period had then expired by the passage of time and such
declaration shall take effect accordingly.

L.   <u>Discretions of Trustees</u>.   The Trustees shall exercise the
powers and discretions vested in them as they shall think most
expedient for the benefit of all or any of the persons actually or

-43-

prospectively interested under this Settlement. The Trustees may exercise (or refrain from exercising) any power or discretion for the benefit of any one or more of them without being obliged to consider the interests of the others or other. Subject to the previous provisions of this Paragraph L., and subject to ARTICLE VII, Paragraph D. hereof, every discretion vested in the Trustees shall be absolute and uncontrolled; every power vested in them shall be exercisable in their sole, absolute and uncontrolled discretion; and the Trustees shall have such discretion in deciding whether or not to exercise any such power. The various rights, powers, authorities, discretions and liberties hereby granted to and conferred on the Trustees, or in any manner vested in the Trustees, with respect to this Settlement, the Trust Fund, any assets thereof or under the control of the Trustees, or any matter or thing relating to all or any of the foregoing, shall be exercisable by the Trustee then in office who is a citizen or resident of the same country as the Settlor, or if there are two (2) Trustees then in office who are citizens or residents of the same country as the Settlor, by the joinder of both such Trustees, or if there are three (3) or more Trustees then in office who are citizens or residents of the same country as the Settlor, by a majority of such Trustees (hereinafter the "Domestic Trustee(s)"). Subject to the recordkeeping and reporting obligations set forth below in this paragraph, such Domestic Trustee(s) may act without the concurrence or knowledge of the other Trustee(s). During any period in which there is no Domestic Trustee then in office, such rights, powers, authorities, discretions and liberties shall be exercisable by the Trustee then in office, or if there are two (2) Trustees then in office, by the joinder of both Trustees, or if there are three (3) or more Trustees then in office, by a majority of the Trustees. At all times the Trustees who so act or shall exercise the various rights (and the like as hereinabove set forth) shall keep proper records thereof and shall without undue delay inform the other Trustees of any such acts or exercises. Any dissenting or abstaining Trustee who has actual knowledge of any

-44-

action shall be absolved from personal liability by registering its
dissent or abstention with the records of the Trust, but it shall
thereafter act with the other Trustee(s) in any way necessary or
appropriate to effectuate the decision validly made by such other
Trustee(s) pursuant to the provisions of this paragraph.  Any such
exercise shall be valid and effective as if all Trustees had
concurred therein.  The foregoing provisions of this Paragraph L.,
ARTICLE V shall at all times be subject to Paragraph A. of this
ARTICLE V.

     M.   <u>Certain Life Insurance Proceeds and Certain Other
Property Received by Trustees</u>.   In the event life insurance
proceeds are payable to the Trust Fund by reason of the death of a
person other than the Settlor, or in the event the Trustees receive
property from a third party, whether by reason of the death of the
third party or otherwise, then the Trustees shall place the
proceeds or property upon the Trustees' receipt in a separate
sub-trust or account under this Settlement, to be held,
administered and distributed pursuant to the terms and conditions
of this Settlement, and any powers or authorities the Settlor may
have over such proceeds or property, held by the Settlor in any
capacity whatsoever, shall be limited or eliminated to the extent
necessary so that the proceeds or property will not be considered
the Settlor's for United States federal gift or estate tax
purposes.  Such powers and authorities of the Settlor's shall vest
in such person as the Trustees may revocably or irrevocably
designate in writing upon receipt of the proceeds or property.

     N.   <u>Exclusive Benefit</u>.  The Trust Fund and the income thereof
shall, at all times, be possessed and enjoyed to the entire
exclusion of any Excluded Person, and of any benefit to any
Excluded Person by contract or otherwise, and no part thereof shall
be paid or lent to or applied for the benefit of any Excluded
Person in any circumstances whatsoever.

-45-

ARTICLE VI

Trustee Powers

The Trustees may, at any time or from time to time during the
Trust Period, in their discretion, exercise the following powers
with respect to this Settlement and the Trust Fund.

A.   Settlement of Further Trusts.  Subject to Paragraph L. of
this ARTICLE VI, by a signed declaration in writing revocable
during the Trust Period or irrevocable, the Trustees may create or
appoint such new or other trusts, powers and provisions governing
the Trust Fund or any part or parts thereof, and the subsequent
income arising from that which is so appointed, for the benefit of
the members of the Appointed Class or any one or more of them
exclusive of the other or others, at such age or time or respective
ages or times, in such shares and proportions, and subject to such
powers of appointment (for the benefit of the members of the
Appointed Class or any one or more of them) as may be vested in any
person or persons, together with such provisions for maintenance,
education, or advancement, or for the purposes of raising a portion
or portions, or for forfeiture in the event of bankruptcy, or
otherwise, together with such discretionary trusts and powers
exercisable by such persons, and generally in such manner as the
Trustees may think fit for the benefit of such members of the
Appointed Class or any one or more of them as aforesaid.  For the
purpose of giving effect to any such declaration in writing, but at
all times subject to Paragraph L. of this ARTICLE VI, the Trustees
shall have the power and authority to revoke all or any of the
trust's powers and provisions herein contained with respect to the
Trust Fund or the part or parts thereof to which such appointment
relates.   In the event of any such appointment the Trustees shall
thenceforward hold the Trust Fund or the part or parts thereof to
which such appointment relates upon and subject to the trust's
powers and provisions so appointed in substitution for any of the
trust's powers and provisions hereof so revoked as aforesaid, and

-46-

in priority to the other trust's powers and provisions herein declared and contained and in any appointment under the foregoing power the Trustees may delegate to any person or persons all or any of the powers and discretions by the Settlement or by law vested in the Trustees.

B.  <u>Transfer of Trust Fund</u>.  Subject to Paragraph L. of this ARTICLE VI, the Trustees may pay or transfer the whole or any part or parts of the Trust Fund to the trustees for the time being of any other trust wheresoever established or existing, and whether governed by the Applicable Law of this Settlement at the time of the exercise of the power contained herein, or by the law of any other jurisdiction, state or territory, so long as the Trustees shall be satisfied that such payment or transfer is or would be for the benefit of the members of the Appointed Class or some or one of them, notwithstanding that other persons (not being any Excluded Person) may be capable of benefiting under such other trust, and so that after such transfer the money, investments and property so transferred shall cease to be regarded as held upon the terms of this Settlement and cease to be regarded as the Trust Fund or part of the Trust Fund of this Settlement, as the case may be, for all the purposes of this Settlement.

C.  <u>Settlement of Capital</u>.  Subject to Paragraph L. of this ARTICLE VI, the Trustees may settle capital on all or any one or more of the members of the Appointed Class, and any settlement made by the Trustees under this present power upon, or for the benefit of, any one or more of the Appointed Class as aforesaid may be created in and under the law of any part of the World (being a part of the World the local law whereof recognizes settlements of the kind proposed to be made).  Any such settlement may contain such trust powers and provisions whatsoever (including trust powers and provisions to be exercised at the discretion of any person or persons) as the Trustees shall think proper for the benefit of such members of the Appointed Class.

-47-

D.   <u>Payment of Taxes</u>.  The Trustees may apply the whole or any part or parts of the Trust Fund in or towards the payment or discharge of any inheritance, death, estate, gift, income or other tax, duty or fiscal imposition whatsoever levied or imposed, in any part of the World, which is payable in respect of or with respect to the Trust Fund or any part thereof, or otherwise with respect to this or any other trust in which the members of the Appointed Class or any one or more of them shall be interested, notwithstanding that the same shall not be recoverable from the Trustees, the Beneficiaries, any member or members of the Appointed Class, or other persons entitled hereunder.

Further, to the extent any United States federal, state or local gift or estate taxes are not ultimately paid by the Settlor or the Settlor's estate, for any reason whatsoever, and which tax liability arises by reason of the Settlor being deemed to be the owner of or have powers over the Trust Fund for tax purposes, the Trustees shall pay from the Trust Fund any such taxes which are incurred in the course of the Trust Period.

The Trustees may pay expenses (other than debts) that are deductible upon the death of the Settlor under Section 2053 of the United States Internal Revenue Code, being mindful, however, that to the extent any such expenses would generate any United States federal estate tax, it may be tax advantageous that such expenses be payable by a source other than the Trust Fund.

E.   <u>Formation of Companies</u>.  The Trustees may form a company or companies or corporate entities in any part of the World and transfer to that company or companies or corporate entities all or any part of the Trust Fund, whether by way of subscription or loan (at or free of interest and whether secured or unsecured) or otherwise, with the cost and expenses of forming such a company being borne by the Trust Fund.

-48-

F.   <u>Formation of Partnerships and Like Organizations</u>.   The Trustees may invest any part or all of the Trust Fund in any partnership, whether ordinary or a limited partnership, whether as a general or limited partner, and whether or not the Settlor is an ordinary, general or limited partner thereof.   Similarly, the Trustees may invest any part or all of the Trust Fund in any limited liability company, limited partnership association, or any other entity, whether as a managing or non-managing member, and whether or not the Settlor is a managing or non-managing member thereof.   In any such investment, the Trustees shall be under no duty to review the financial viability or value or operations of the same.

G.   <u>Interpretation of Foregoing Provisions</u>.   For purposes of the foregoing provisions of this ARTICLE VI, the word "trust" shall mean any trust created by any settlement of trust, declaration of trust, will, codicil, or other instrument under the law in force in any part of the World, and a person shall be deemed to be interested under a trust if any capital or income comprised in the trust is or may become liable to be transferred, paid, applied or appointed to him or for his benefit, either pursuant to the terms of the trust or in consequence of an exercise of any power of discretion thereby conferred on any person.   The foregoing provisions of this ARTICLE VI shall have effect notwithstanding any rule of law or equity restricting the delegation of a power or discretion; however, no power shall be exercised in such a way as to infringe any rule against perpetuities applicable hereto.   Upon a payment or transfer of any money or property to the trustees of any other trust, pursuant to the foregoing provisions of this ARTICLE VI, the Trustees hereof shall not be bound to see to the further application of such money or property.

H.   <u>Charitable Distributions</u>.   During the Settlor's lifetime, the Trustees, at the request of any member of the Appointed Class, if the Trustees shall so think fit, may pay or apply any part of

-49-

the Trust Fund to or for the benefit of any charitable institution
or other charitable objects approved by such member of the
Appointed Class. Any such payment or application shall be deemed
to be for the benefit of such member of the Appointed Class. The
Trustees shall not be restricted by any rule or law as to the
amount or manner of such payment or application. The receipt in
writing of the Treasurer or other officer of any charitable
institution shall be a sufficient discharge to the Trustees for any
net income or capital paid to such institution hereunder.

I.   Extension of Credit. The Trustees shall have the power,
at any time and on such terms as they may deem appropriate, to lend
money and give credit to, and to guarantee and become, or give
security out of the Trust Fund for the performance of any
obligations of any person whether or not such person is a
Beneficiary or member of the Appointed Class, where doing so may
seem in the sole opinion of the Trustees as being advantageous,
desirable, in the interests of, or for the benefit of, all or any
Beneficiaries or member or members of the Appointed Class. If the
beneficiary of the exercise of the foregoing power is a Beneficiary
or a member of the Appointed Class, then the Trustees may, in their
discretion, secure the resulting obligation owing to the Trust Fund
by a lien on all of the Beneficiary's or Appointed Class member's
rights in and to the Trust Fund, notwithstanding the provisions of
ARTICLE V, Paragraph B. hereof. For these purposes, but without
limiting the generality of the foregoing, the Trustees shall have
the power to mortgage or charge any investments, property or other
assets which may from time to time form a part of the Trust Fund,
or to deposit, pledge or transfer any such investments, property or
other assets with or to any person by way of security. No
purchaser, lender or other person paying or advancing money on a
sale, mortgage, charge or other transaction in respect of which the
Trustees may deem it appropriate to lend money, or to give credit,
or to guarantee, or become or give security, as aforesaid, shall be
concerned as to the propriety of the actions of the Trustees under

-50-

00069

the provisions of this Paragraph I. or the application of any money. No loan shall be made on terms such that repayment shall be postponed beyond the Trust Period. In addition, the Trustees shall have the power to advance Trust Fund income to or for the use of a Beneficiary, for which advance the Trustees shall have a lien on the future benefits of such Beneficiary from the Trust Fund.

J.    <u>Interested Trustees</u>. The Trustees shall have power to enter into any transaction concerning the Trust Fund notwithstanding that one or more of the Trustees may be interested in the transaction other than as one of the Trustees.

K.    <u>Additional Powers</u>. The additional Trustees' powers and provisions which are set forth in Schedule VI attached hereto and incorporated herein by this reference, shall have effect as if fully set forth in this ARTICLE VI. However, in no event shall any power or provision (wheresoever set forth in this Settlement) be exercisable after the expiration of the Trust Period or in such a way so as to infringe any applicable rule against perpetuities or rule against excessive accumulations, or to benefit any Excluded Person. In addition to such powers and provisions and, notwithstanding any rule of law or equity to the contrary, each Trustee is hereby authorized to:

1.    accept, purchase, acquire, hold and continue to hold any item or class of items identified as a Scheduled Investment without inquiry or concern as to whether such investment taken by itself or as part of the Trust Fund is prudent, unwise or reasonable, and without inquiry or concern as to the ongoing success, financial viability or value or operations of such investment.

00070

2.    borrow against and pledge any item or class of items identified as a Scheduled Investment without inquiry or concern as to the ability of the Trust to repay other than from the proceeds of realization of such security.

3.    lend against security given over any item or class of items identified as a Scheduled Investment without inquiry or concern as to the ability of the borrower to repay other than from the proceeds of realization of such security.

L.   <u>Limitation on Trustees' Powers after the Death of the Settlor</u>.  Notwithstanding anything to the contrary set forth in this Settlement, no power, authority or discretion of the Trustees may be exercised in a manner that will have the effect of varying in any material way the dispositive provisions hereunder that shall apply to the Trust Fund upon and after the death of the Settlor, including but not limited to those provisions set forth in Paragraph G. of ARTICLE III.  By way of example and not limitation, no such power, authority or discretion shall be exercised after the Settlor's death with respect to any trust or sub-trust created herein (i) in a manner that would materially modify any beneficiary's interest in the assets thereof, the timing of any distribution to a beneficiary, or the amount of any such distribution, except to the extent such powers, authorities or discretions are expressly set forth within such dispositive provisions, or (ii) in a manner that would in any way be inconsistent with or put at risk qualification for the federal estate tax unified credit, generation-skipping transfer tax exemption, charitable deduction, or any other tax benefit, if there is a clear intention hereunder that assets should so qualify for any such credit, deduction or benefit.

00071

## ARTICLE VII

### Trust Protector

A.   <u>Designation of Protector</u>.   The first Protector shall be the Settlor, who shall serve in such capacity until the earlier of such person's death, legal disability, or resignation. A Protector may resign by delivering a written resignation to any Trustee or to the person then having the power to appoint a successor Protector as provided in Paragraph B. immediately below.  A Protector shall not bear any liability for the exercise of his powers, such being personal duties and not fiduciary duties.

B.   <u>Successor Protector</u>.   A successor Protector shall be appointed whenever the Protector for the time being, for whatever reason, fails to qualify or ceases to act as Protector.  Whenever occasion arises for appointing a successor Protector, such successor Protector shall be appointed by a signed declaration in writing (which may be a Will or Codicil) of the person making such appointment.  The same shall be effective when the document or a certified copy thereof effecting the same is received by one of the Trustees, who shall notify the other Trustees thereof and shall cause a memorandum of such appointment to be endorsed on this Settlement.  A successor Protector (as well as one or more of such successor's replacement(s)) may be appointed in advance by a signed declaration in writing (which may be a Will or Codicil) of the person making such appointment.   To be effective, the signed declaration in writing:  (i) must specify the date or event upon which a respective Protector then in office shall be removed if the Protector is to be removed upon a specific date or event, with the respective successor to concurrently take office; and (ii) must be delivered to and received by one of the Trustees (as an original document or as a certified copy thereof), with the recipient Trustee then notifying the other Trustees thereof and causing a memorandum thereof to be endorsed on this Settlement, any such

-53-

00072

declaration to be revocable in the same manner before it takes effect, the last such declaration to control.

The power to appoint a successor Protector shall be vested in such persons as are specified in Schedule VII attached hereto and incorporated herein by this reference, in the order or priority and in the manner and subject to such conditions (if any) therein specified.

C.   Vacancy.  If, at any time, there is for a period of six (6) months no Protector whatsoever, the Trustees shall, from the expiration of that period and unless and until a Protector is appointed under Paragraph B. above, have power themselves to appoint a person other than one of the Trustees to be the Protector.  Any appointment so made under this power shall have effect in all respects as if it had been duly made under Paragraph B. above.

D.   Veto Power of Protector.  Notwithstanding anything to the contrary herein contained, and in particular anything conferring an absolute or uncontrolled discretion on the Trustees hereof, all and every power and discretion vested in the Trustees by such provisions of this Settlement as are specified in Schedule VIII attached hereto and incorporated herein by this reference shall only be exercisable by them subject always to the power of the Protector to veto any exercise by the Trustees of such power or discretion, and accordingly the Trustees shall be required to provide the Protector with reasonable prior notice before any such powers or discretions may be exercised so as to allow the Protector reasonable advance opportunity within which to veto or refrain from vetoing the exercise of the power or discretion.  The Protector's exercise or non-exercise of this veto power shall be communicated in writing to the Trustees and failure to so communicate in a timely fashion provided notice is actually received by the Protector shall be treated by the Trustees as a veto by the

-54-

00073

Protector of the proposed exercise of the power or discretion; however, if one or more of the Trustees reasonably believes that failure by the Protector to so communicate is due to the Protector being restrained or enjoined from doing so, then such failure to communicate shall be treated by the Trustees and deemed for all purposes hereof (yet always subject to the provisions of ARTICLE V, Paragraph A. hereof) as acquiescence by the Protector to the proposed exercise of the power or discretion.  It is further provided that, notwithstanding anything to the contrary otherwise herein expressed or implied, no discretion or power conferred upon the Protector, or upon any other person by this Settlement, or by any rule of law, or arising in consequence of the exercise of any power conferred upon the Protector, or any other person by this Settlement, shall be exercised, and nothing contained herein shall operate, so as to cause the Protector to be successful in ordering any action or causing any result which is not of the Protector's own free will, or which is otherwise the result of the Protector acting under the duress or influence of an outside force.

E.  <u>Waiver of Veto Power</u>.  The Protector may, from time to time, by written notice to the Trustees (a memorandum of which shall be endorsed on or permanently attached to this Settlement) declare (either generally or in relation to any particular act or acts, and either permanently or for such period as shall be specified in the notice) that any act or acts herein declared to be subject to the veto power of the Protector shall not be so subject, and the said notice shall be effective according to its terms.

F.  <u>Trust Construction If No Protector</u>.  If and whenever, and so long as there is no Protector capable of acting, a memorandum to that effect shall be endorsed on or permanently attached to this Settlement and all the provisions of this Settlement (other than Paragraphs A., B., C., E. and this Paragraph F. of this ARTICLE VII) shall be read and have effect as though

-55-

00074

references to the Protector or the veto power of the Protector were
omitted.

G.   <u>Committee of Trust Protectors</u>.  The Protector may, in the
Protector's sole discretion, from time to time or at any time,
determine that the position of Protector shall be composed of a
Committee of Trust Protectors, which Committee shall consist of
four (4) or fewer members, as the Protector may so choose, or as
the Protector may otherwise set forth in written rules and
regulations which shall govern the Committee.   In no event shall
such rules and regulations be inconsistent with or otherwise amend,
revoke or change any other term, provision or discretion of this
Settlement.

## ARTICLE VIII
### Irrevocable Trust

The Settlement hereby created shall be irrevocable.

## ARTICLE IX
### Applicable Law

A.   The Applicable Law (as defined in Paragraph A. of ARTICLE
I) of this Trust shall be the law of the Cook Islands.

B.   Notwithstanding Paragraph A. immediately above, as it is
the intent of the Settlor that this Trust not constitute a "foreign
trust" as defined in Section 7701(a)(31)(B) of the United States
Internal Revenue Code of 1986, as amended (hereinafter, the "Code")
as such Code Section itself may be amended or superseded: (i) the
place of administration shall be the state of residence or domicile
of the first Trustee listed on Schedule I hereto, provided that in
the event such person no longer serves as a Trustee, the place of
administration shall be the state of residence or domicile of the
longest-serving Trustee resident or domiciled in the same country

-56-

as a majority of the Beneficiaries; and (ii) with respect to all matters of administration of this Trust, but only as to matters of administration, the Applicable Law of this Trust shall be the laws of the place of administration. As such, primary supervision of administration shall be in the courts of the place of administration. Notwithstanding the provisions of the preceding part (ii) of this Paragraph B., to the extent that the laws regarding administration of trusts in such place of administration conflict with the International Trusts Act 1984, as amended from time to time (the "Act") of the Cook Islands, as it may exist regarding the administration of trusts, the Act shall override and govern; and in such case, the courts of such place of administration shall apply the Act in the supervision of the administration of this Trust.

C.   In furtherance of the foregoing, it is the intent and purpose of the Settlor that this Trust satisfy and meet the definition of a "United States person" as that term is used within Code Section 7701(a)(30) as such Code Section may be amended or superseded. In furtherance of this intent and purpose, no powers of the Trustees may be exercised and no provision hereof shall operate in any manner so as to cause this Trust to fail to so qualify as a United States person, and to such extent the respective powers of the Trustees as set forth throughout this Trust are hereby limited. Further, with respect to future regulations, rulings or court decisions which may affect the evolving definition of a United States person as it applies to a trust, the Trustees are directed to manage and administer the Trust Fund in such a manner as to ensure continuing compliance. If meeting the definition aforesaid shall require the Trustees to sign an agreement, make an election or use their powers to amend this Trust, they shall do so without liability.

D.   The foregoing provisions of Paragraphs A., B. and C. of this ARTICLE IX are subject always to the Trustees' powers as set

-57-

forth within the second paragraph of Paragraph B. of ARTICLE IV
hereof, subject always to Paragraph I. of ARTICLE V hereof, and
subject always to the provisions of each other, with it being
acknowledged that the exercise of such powers may result in this
Trust then meeting the definition of a "foreign trust" under the
Code.

## ARTICLE X
### General Provisions

Unless otherwise specifically provided elsewhere herein, the
following general provisions shall govern this Settlement:

A.   Exercise of Power of Appointment.  In the exercise of any
power of appointment created herein, unless the contrary is stated,
the donee of such power may appoint life estates to one or more
objects of the power with remainders to others, appoint to
grandchildren or more remote Issue even though the parents of such
appointees are living, impose lawful conditions upon any
appointment provided no one other than the object of the power is
benefited thereby, impose lawful spendthrift restrictions upon any
appointment, make appointments outright to an object or in trust
for the object, and create in any object a general power of
appointment or a limited power to appoint among objects of the
original power.   Further, in the exercise of any power of
appointment created herein the donee may appoint specific assets of
the Trust Fund and may appoint specific percentages or dollar sums
thereof, and in the event of the latter the Trustees shall take
such steps as may be reasonably necessary to satisfy any such
dollar sum so appointed.  These powers of the donee of a power of
appointment are in addition to, and not in restriction of, powers
he would otherwise have.  No power of appointment described in this
Settlement may be exercised in a manner that would postpone the
vesting of assets in a beneficiary or beneficiaries beyond the
Trust Period as defined herein.

-58-

If on expiration of ninety (90) days after the death of any person holding a power of appointment given him or her in this Settlement, more than one document purporting to exercise the power has been brought to the attention of the Trustees, the Trustees shall distribute such property in accordance with the document last in date that effectively exercises the power. If no document purporting to exercise the power has been brought to the attention of the Trustees within such ninety (90) day period, the Trustees may distribute any property according to the terms of this Settlement as if the power had not been exercised. If a document purporting to exercise the power is later located, or if a document bearing a later date is later located, the Trustees shall not be liable to the appointees under that exercise, and the rights of the appointees and the persons receiving property from the Trustees shall be governed by applicable law. A Will or Codicil otherwise effectively exercising a power under the provisions of this Settlement need not be admitted to probate to be an effective exercise of this power. Delivery to the Trustees of a duly certified copy of a Will or Codicil on file in any court or other official depository shall be equivalent to delivery of the original document.

B.   Release or Retention of Powers. Subject to the paragraph immediately following, all powers created by this Settlement are releasable in whole or in part. In addition to any other method of release recognized by law, any such power may be released by an instrument in writing, filed with at least one Trustee (who is other than the releasing party) declaring the donee's intention to release.

The Trustees shall have power, at any time or times, by a signed declaration in writing (revocable during the Trust Period or irrevocable) to release or to any extent restrict the future exercise of any powers hereby or by law conferred on them, notwithstanding the fiduciary nature of any such power; provided,

-59-

however, that the power conferred upon the Trustees by ARTICLE V, Paragraph F. hereof to add to the Appointed Class shall not be capable of being released or restricted unless at the date of any such release or restriction there are at least two (2) Beneficiaries.

C.    <u>Headings Not to be Considered</u>.  The ARTICLE and Paragraph headings used herein are for guidance only and shall have no significance in the interpretation hereof.

D.    <u>Disclosure</u>.  Notwithstanding any rule of law or equity to the contrary, no Trustee domiciled in the Cook Islands shall have any duty to divulge any information concerning any aspect of this Trust including (without limiting the generality of this provision) its existence, the existence of any entitlement whether vested or contingent of any Beneficiary, or any decision of the Trustee, to any person including (without limiting the generality of this provision) any Beneficiary provided that the Trustee shall supply such information as is requested to the Settlor, the Protector, or any person authorized by either of them, and such Trustee shall have discretion to provide information concerning any aspect of the Trust to any Beneficiary, whether existing or contingent if, in the Trustee's opinion, it is in the interests of the Trust so to do.

E.    <u>Survivorship</u>.  A person shall not be considered to survive another if he or she shall die within ninety (90) days of the death of such other.  Notwithstanding the above, this paragraph shall not apply to any case where its application would cause any provision of this Settlement which would otherwise be valid to be void under any applicable rule against perpetuities.

F.    <u>Methods of Distribution</u>.  In addition to any other method or manner of distribution herein referenced, the Trustees may make any payment or distribution provided for hereunder:  (1) directly to the recipient beneficiary; (2) without bond to the recipient

-60-

beneficiary's guardian or conservator, for expenditure only on the beneficiary's behalf; (3) to any person deemed suitable by the Trustees, for expenditure only on the recipient beneficiary's behalf; (4) by direct payment of the recipient beneficiary's expenses; or (5) if the recipient beneficiary is not of full age, in any form allowed by law for gifts to minors.

G.   <u>Validity</u>.   Should any provision of this Settlement of Trust be determined to be void or unenforceable pursuant to Applicable Law, the remaining provisions of this Settlement of Trust shall remain in full force and effect, and shall be read and construed as if the void or unenforceable provision had been deleted.

H.   <u>Notices</u>.   Except as may otherwise herein be provided, all notices required or permitted by this Settlement shall be in writing and shall be delivered in person; sent by government mail service, postage prepaid; delivered by a recognized air courier service; or delivered by facsimile (telecopier, rapifax, or the like) when receipt of such is acknowledged in writing by the addressee.   All notices shall be addressed as set forth herein except that any person may from time to time give notice to others of a change of address for this purpose.   Unless otherwise herein provided, all notices required or permitted by this Settlement shall be considered effective and received upon actual receipt.

I.   <u>Distribution to Custodians</u>.   The Trustees should consider payments to any person having custody of a minor beneficiary of this Trust as the Trustees may determine appropriate, if such person shall find it necessary to enlarge the home or to move into a larger home in order to accommodate such beneficiary, in which case payment may be made directly to such person without any obligation of repayment to the Trust Fund, the beneficiary or anyone else, and to consider compensating such person in such

-61-

amounts as Trustees shall consider consistent with the services rendered by such person and the objectives of the Trust Fund.

J.    <u>Provision for Certain Obligations</u>.

1.    The Settlor wishes to protect against any transfer of money or property by any contributor to the Trust from being a fraudulent transfer to the detriment of a creditor of the Settlor, under either or both of United States federal law or state law, as may be determined to be applicable by a court sitting in the United States. Accordingly, at such time, if any, that the requirements set forth herein are satisfied in full with respect to a particular claimant, then notwithstanding any provision of the Applicable Law (as such capitalized term is defined in the Trust Agreement) to the contrary (including specifically but without limitation, any statute of limitation or any tolling period on challenging transfers as fraudulent transfers or as fraudulent dispositions if and to the extent the same is or may be shorter than the same or similar limitations period under the law determined to be applicable by the court hearing the dispute in the United States, it being agreed that in the absence of any such court or any such determination, the law of the Settlor's domicile at the time of any transfer being challenged shall apply), the Trustees are directed to pay out of the Transfers or any accretions or additions thereto, or substitutions thereof or proceeds therefrom (the "respectively contributed property") any amounts (including but not limited to any judgments, fines, penalties, restitution and the like): (i) that are ultimately and finally

-62-

judicially determined to be properly due and owing such a claimant by the contributor and that are not ultimately satisfied; or (ii) with respect to which the contributor of the respectively contributed property has voluntarily and not under duress agreed to the payment or settlement thereof. If, in order to satisfy the foregoing directive, the Trust would be required to receive distributions from, liquidate all or a portion of an interest in, or cause the dissolution of one or more underlying entities in which it owns an interest (such as partnerships, corporations or limited liability companies), then the Trustees shall take such steps as are in their power to effectuate such distribution(s), liquidation(s) and/or distributions.

2.    The following are conditions precedent to any payment being made under the foregoing:

a.    The claimant must have delivered to the Trustees then in office under the Trust a written notice requesting that the Trustees then in office pay to the claimant out of the respectively contributed property an amount described under item (i) and/or (ii) immediately above, which written notice or supplement thereto contains sufficient information to satisfy the Trustees then in office in good faith as to the following matters;

b.    The identity of each contribution the claimant declares is subject to its written notice, including to the extent reasonably available

-63-

to the claimant the nature and value of the property contributed, the date of its disposition to the Trust, and identity of the contributor;

c.  That as of the date of each such contribution by the contributor the claimant had either a claim pending or threatened against the contributor, or the claimant was a person from whom or that the contributor reasonably expected a claim to be asserted against the contributor, or the claimant was a person in favor of whom the contributor had a judgment or by whom there existed an assessment;

d.  Information as to the amount the claimant claims is due and payable by the contributor to the claimant under one or more of the categories in each category in subparagraph a. or b. above;

e.  Establish to the reasonable satisfaction of the Trustees then in office by affidavit(s) or otherwise that the amount claimed has been ultimately and finally judicially determined to be properly due and owing by the contributor to the claimant, or alternatively, that it is an amount that the contributor has voluntarily and not under duress agreed to the payment or settlement thereof;

f.  Establish to the reasonable satisfaction of the Trustees then in office by affidavit(s) or otherwise at the date of the notice that the contributor remains legally bound to pay such an amount to the claimant; and

-64-

00083

g.  Information as to whether there are other persons who might also qualify as claimants hereunder.

3.  In satisfying itself as to subparagraphs 2.e. and 2.f. above, the Trustees then in office, in their reasonable discretion, may take legal advice as to whether the contributor has any defense to payment of any amount claimed by the claimant, and if the Trustees then in office receive advice to that effect the Trustees then in office may cause that defense to be asserted in the appropriate forum (the Trust meeting all reasonable costs including legal costs relating thereto), and if asserted the Trustees then in office shall not make any payment hereunder until and unless that defense is discharged or otherwise dispensed with.

4.  Prior to any payment being made hereunder, the Settlor or the claimant must: (i) establish to the reasonable satisfaction of the Trustees then in office that there are no other actual or potential claimants with respect to the same claim or liability or other matter (as referenced in subparagraph 2.g. above), who might also have a reasonably assertable claim to Trust property pursuant to the provisions of this Agreement; or (ii) to the reasonable satisfaction of the Trustees then in office, indemnify the Trust and all Trustees against any and all such additional potential claimants; or (iii) enter into an agreement with and between the claimant, all such additional potential claimants and the Trustees then in office that satisfies the said Trustees that Trust assets or any Trustee will not be put at further risk by distributing property to the

-65-

claimant. If, however, there are or reasonably appear in the future to be multiple or competing claims or claimants, and if the Trustees then in office have a reasonable and justifiable concern that the passage of time may further expose the Trust, said Trustees or anyone affiliated therewith to liability, then without liability to the Settlor or any member of the Appointed Class or any Beneficiary of the Trust, the Trustees then in office may distribute to the Settlor the whole or any part of the trust estate.

5.  Notwithstanding the foregoing, it is the Settlor's intent that no claimant shall receive any distributions or payments from any assets of this Trust that arise from the business or investment activities of the Trust that do not have any application or relation to assets transferred or conveyed to this Trust by the respective contributor, including without limitation assets conveyed to the Trust by another party, and assets, gain or income realized by the Trust with the proceeds of any loan made to the Trust (whether or not secured by assets of the Trust Fund, unless secured by one or more or all of the Transfers).

6.  A Trustee shall be entitled to take legal advice with respect to any aspect of the application of this Paragraph J., as an expense of the trust estate, and any Trustee shall be free to apply to any court as the Trustee deems appropriate for directions on any matter affecting the Trust or the Trustee or any other Trustee.

7.  The provisions set forth in this Paragraph J. do not and shall not be interpreted to create any duty

-66-

by the Trustees in favor of any claimant unless and until the respective claimant has fully satisfied the requirements set forth herein.

8.  If the Trustees then in office determine to make a payment or payments to one or more claimants pursuant hereto, said Trustees may in their discretion first request that the partnership referred to in Schedule II hereof make a proportionate distribution of one or more or all of its assets.

9.  Notwithstanding anything to the contrary herein contained, the obligations of the Trustees as herein set forth shall terminate upon the expiration of the Trust Period (as defined in the Trust Agreement); the liability of the Trustees of the Trust is and shall at all times be limited to the assets held by the Trustees in their capacity as Trustees; and no Trustee shall have any duty to conserve the assets of the Trust or to manage the assets to meet the obligations hereunder.

K.  <u>Special Provisions</u>.  The special provisions, if any, which are to apply in the course of administering the Trust during the Trust Period are as set forth in Schedule IX attached hereto and incorporated herein by this reference.

L.  <u>Settlement Schedules</u>.  Schedules I through IX as hereinbefore referenced are as next follows.

-67-

SCHEDULE I TO THE

914 TRUST

The names and business addresses of the Trustees referenced on
page 1 of this Settlement of Trust are as follows:

Trustee:

James MacDonald
6633 Hollywood Boulevard
Hollywood, California 90069
U.S.A.

Trustee:

Cook Islands Trust Limited
P.O. Box 141
1st Floor, BCI House
Rarotonga, Cook Islands
South Pacific

-68-

00087

## SCHEDULE II TO THE

## 914 TRUST

The money and/or other property settled hereby and referred to in the first recital of this Settlement of Trust are as follows:

All of Settlor's right, title and interest as a limited partner in and to that certain Colorado limited partnership known as 914 Partners, Ltd.

00088

# SCHEDULE III TO THE
## 914 TRUST

The Beneficiaries referenced in ARTICLE I, Paragraph C. of this Settlement of Trust are as follows:

The Settlor
The Settlor's brother, Dana Moore
The Settlor's brother's future Issue

-70-

00089

**SCHEDULE IV TO THE**

**914 TRUST**

The Excluded Persons referenced in ARTICLE I, Paragraph F. of this Settlement of Trust are as follows:

Presently none

00090

## SCHEDULE V TO THE
## 914 TRUST

Appointment of successor or additional Trustees under ARTICLE IV, Paragraph A. and Paragraph B. of this Settlement of Trust:

      1.  The Protector

      2.  The Trustees

00091

## SCHEDULE VI TO THE
## 914 TRUST

The additional Trustee powers and provisions referenced in ARTICLE VI, Paragraph K. of this Settlement of Trust are as follows:

1.    Subject always to any restrictions expressly contained in this Settlement, the Trustees shall have all powers and authorities of investment, repair, management, sale, exchange, partition, mortgage, leasing, insurance, protection, improvement, equipment dealing and disposition, and all other powers of an absolute beneficial owner of the Trust Fund, including the power to execute and deliver all legal instruments which are necessary or appropriate for the administration of the Trust Fund. The Trustees powers shall not be restricted by any principle of construction (or rule or requirement of the Applicable Law save to the extent that such is obligatory) but shall operate according to the widest generality of which the foregoing words are capable, notwithstanding that certain powers are hereinafter more particularly set forth.

2.    The Trustees shall have the power and authority, as in some instances more particularly set forth hereinafter, to hold, retain, invest, reinvest, repair, and manage without diversification as to kind, amount, or risk of nonproductivity in realty or personalty and without limitation by statute or rule of law except to the extent such is obligatory; partition, sell, exchange, grant, convey, deliver, assign, transfer, lease, option, mortgage, pledge, abandon, borrow, loan, contract, distribute in cash or kind or partly in each at fair market value (as determined by the Trustees in their good faith discretion) on the date of distribution without requiring pro rata distribution of specific assets and without requiring pro rata allocation of the tax bases of such assets; hold in nominee form, continue businesses, vote

-73-

00092

shares or interests, carry out agreements, deal with itself, other fiduciaries, and business organizations in which the Trustees may have an interest; establish reserves, release powers, and abandon, settle, or contest claims.

3.   The Trustees shall have the power and authority to operate or participate in the operation of any business belonging to the Trust Fund, or received by the Trustees for such time and in such manner as the Trustees may in their sole discretion deem advisable and for the best interest of the Trust Fund or to sell and liquidate the business at such time and on such terms as the Trustees may in their sole discretion deem advisable and for the best interests of the Trust Fund.  Any such operation, sale or liquidation by the Trustees, in good faith, shall be at the risk of the Trust Fund and without liability on the part of the Trustee for any resulting losses.  Notwithstanding the foregoing or anything to the contrary herein contained, the Trust itself shall not have the power or ability and under no circumstances shall the Trust itself operate or participate in the operation of a business at the Trust level; any such activity must take place at the level of a separate entity in which the Trust has an interest.

4.   The Trustees shall have the power and authority to sell, lease or grant the right to mine or drill and to remove from any real property, gas, oil, and other minerals and any timber, whether or not any such grant or lease is to continue longer than the Trust Period; pool or unitize any or all the lands, leaseholds or other types of mineral interests; engage in secondary or tertiary recovery methods; make and execute mineral royalty conveyances; execute options, contracts and any other instruments necessary or desirable to engage in the oil, gas, mining or timber business; and any other act or thing which may be now or hereafter recognized or contemplated as common or proper practices among those engaged in the business of prospecting for, developing, producing, processing, transporting or marketing any such oil, gas, mineral or timber interests.

-74-

5.    The Trustees shall have the power and authority to abandon any property which the Trustees shall deem to be worthless or not of sufficient value to warrant keeping or protecting; abstain from the payment of taxes, liens, water rents, assessments, repairs and maintenance of any such property; permit any such property to be lost by tax sale or other proceeding; or convey any such property for a nominal consideration or without consideration.

6.    Subject to clause 3. above, the Trustees shall have the power and authority to operate a business in or hold interests in any form of organization that the Trustees consider appropriate or deem advisable in connection with the holding, owning, administration or distribution of any property, and may transfer any property to any such organization, and may incorporate or otherwise change its form.

7.    The Trustees shall have the power and authority to invest or lay out Trust monies in the purchase of or at interest upon the security of such stocks, funds, shares, securities or other investments or property of whatsoever nature and wheresoever situate, whether involving liability or not, and whether producing income or not; or upon such personal credit with or without security as the Trustees shall in their absolute discretion think fit, including the purchase, replacement, erection and/or improvement of any property as a residence for any person or persons who may be a Beneficiary or a member of the Appointed Class hereunder, and including the purchase of chattels for the use of such person or persons.    In the professed exercise of this power the Trustees shall not be liable for any loss to the trust premises arising from any investment or purchase made in good faith. Without prejudice to the generality of the foregoing:

(a)    The acquisition of any reversionary interest in property, a policy, securities or other investments not producing income or in respect of which no dividend, interest or

-75-

00094

rent is payable, shall be deemed to be an authorized investment of Trust monies.

(b)     The acquisition of any limited interest in property, any annuity, any policy, any securities, or any other investments of a wasting nature shall be deemed to be an authorized investment of trust moneys.

(c)     The Trustees shall have the power and authority to make any investment mentioned in subclause (a) and (b) immediately above notwithstanding that the making thereof may affect or alter inter se the interests of the persons respectively interested in the Trust Fund hereunder.

(d)     The Trustees shall have the power and authority to apply any monies forming part of the capital of the Trust Fund or any accumulations of income that have not been added to the Trust Fund as an accretion thereto in the purchase or subscription of partly paid shares and shall have the power to pay up such shares at such times and in such manner as they shall in their absolute discretion determine.

(e)     The Trustees shall have the power and authority pending the investment thereof, for any period, to place any monies forming part of the Trust Fund or accumulations of income that have not been added to the Trust Fund as an accretion thereto on current or deposit account with any bank or bankers or any other company or corporation conducting the business of banking or accepting monies on deposit in any part of the World, and may open and maintain banking accounts in their joint names or in the name of any one or more of them, or in the name of the Trust.

-76-

00095

(f)   The Trustees shall have the power and authority to invest the whole or any part of the Trust Fund in effecting, purchasing or otherwise acquiring and paying premiums on any policy or policies of assurance upon the life or lives of any person or persons, whether such policies be whole life, term life, universal life, or endowment, or policies restricted to death by accident, and generally upon any terms and conditions as the Trustees shall think fit.    The Trustees shall have all the powers of an absolute beneficial owner as respects any policy forming part of the Trust Fund or effected, purchased or otherwise acquired, including the power to exercise any option afforded by such policy to sell or realize any such policy, to convert the same into a fully paid up policy, or into any other form of assurance.

(g)   The Trustees shall have the power and authority to leave any assets subject hereto in the state of investment in which they may be from time to time.

(h)   The Trustees shall have the power and authority at any time or times to sell or call in any investments or property for the time being comprised in the Trust Fund or representing accumulations of income that have been added to the Trust Fund as an accretion thereto, or to transpose or convert the same into any other investments or property hereby authorized.

(i)   The Trustees shall have the power and authority to vote in person or by proxy shares of stock or other securities which are assets of the Trust Fund.

(j)   The Trustees shall have the power and authority to pay calls, assessments, and any other sums chargeable to or accruing against or on account of shares of stock or

-77-

other securities which are assets of the Trust Fund
whenever such payments may be legally enforceable against
the Trustees or any property of the Trust Fund or
whenever the Trustees deem payment expedient and for the
best interests of the Trust Fund.

(k)     The Trustees shall have the power and authority to sell
or exercise stock subscription or conversion rights,
participate    in    foreclosures,    reorganizations,
consolidations, mergers, or liquidations; to enter into
voting trust agreements, or other similar arrangements;
and   to   consent   to   corporate   sales,   leases,   and
encumbrances.    In   the   exercise   of   such   powers   the
Trustees shall be authorized, whenever they deem such
course expedient, to deposit stocks or other securities
which are assets of the Trust Fund with any protective or
other similar committee, or with voting trustees, under
such terms and conditions respecting the deposit thereof
as the Trust Fund may approve.

(l)     The Trustees shall have the power and authority to hold
the assets of two or more trusts or parts of such trusts
created by the same instrument or by two or more
instruments as an undivided whole, without separation as
between the assets of such trusts or parts of such
trusts; but such separate trusts or parts of such trusts
shall have undivided interests in such assets; and no
such holding shall defer the vesting of any estate in
possession or otherwise.

(m)     The Trustees shall have the power and authority in the
case of an estate, to join with the surviving spouse, if
any, his conservator, guardian, executor of his will, or
administrator of his estate, in the execution and filing
of a joint income tax return for any period prior to the

-78-

death of a decedent for which he has not filed a return, or a gift tax return on gifts made by the decedent's surviving spouse, and to consent to said gifts being made one-half by the decedent, for any period prior to a decedent's death, and to pay such taxes thereon as are chargeable to the decedent.

(n)    The Trustees shall have the power and authority to retain stock of a corporation, to exchange or convert such stock for the stock or other securities of an affiliate of the corporation issuing such stock, and to retain such new stock and other securities.   For the purposes of this subparagraph (n), "corporation" includes the corporate fiduciary as well as any other corporation, and "affiliate" of a corporation means any corporation controlling, controlled by, or under common control with such corporation, or any corporation formed as a result of or for the purpose of effectuating any merger, consolidation, or reorganization of such corporation.

8.    The Trustees shall not be bound or required to interfere in the management or conduct of the business of any company or other corporate entity or partnership interest (whether ordinary, limited or general) wherever resident or incorporated in which the Trust shall be interested even though it may hold the whole or a majority of the shares carrying the control of the company or other corporate entity or partnership interest (whether ordinary, limited or general), so long as the Trustees shall have no notice of any act of dishonesty or misappropriation of monies on the part of the directors or officers or other persons having the management of the company or other corporate entity or partnership interest (whether ordinary, limited or general).   The Trustees shall be at liberty to leave the conduct of the business (including the payment or non-payment of dividends) wholly to such directors or officers or other persons. No Beneficiary or member of the Appointed Class

-79-

00098

hereunder shall be entitled to require, the distribution of any dividend by any company or other corporate entity or partnership interest (whether ordinary, limited or general) wherever incorporated or resident, or require the Trustees to exercise any power they may have of compelling any such distribution.

9. The Trustees shall have the power and authority to employ and pay at the expense of the Trust Fund any agents in any part of the World, whether attorneys, advocates, solicitors, accountants, brokers, banks, trust companies, or the like, without being responsible for the default of any agent who is employed in good faith to transact any business or do any act required to be transacted or done in the execution of the trusts hereof including the receipt and payment of monies and the execution of documents.

10. Without limiting the generality of anything set forth herein, the Trustees shall have the power and authority, from time to time and at any time, to employ on such terms and with such payments as they may think fit any person, firm or company in any part of the World as an investment adviser, for the purpose of advising them as to the investment policy to be followed in the administration of the Trust Fund and if and so far as the Trustees follow the advice proffered by such investment adviser, they shall not be responsible for the success or failure of the policy so pursued. In determining the payment to be made to such investment adviser the Trustees may, if they think fit, authorize such investment adviser to retain for its own use and benefit any commissions or shares of commissions customarily or by usage payable to such investment adviser in relation to any dealing or transaction with or concerning the Trust Fund or any part thereof or such accumulations as aforesaid.

11. The Trustees shall have the power and authority to permit any moneys, bonds, share certificates or other securities for money or documents of title to property, real or personal, for the time

-80-

00099

being subject hereto to be and remain deposited with one, some or all of the Trustees, or with any person or persons in any part of the world, and permit any investment, securities or other real or personal property, or any share or interest therein, which shall be for the time being subject hereto to be and remain invested in the names of nominees or trustees in any part of the World instead of in the names of the Trustees, with power to delegate to such persons such of the powers, authorities and discretions hereby or by law vested in the Trustees with reference to the premises so deposited or the property so invested in the name of such nominees or trustees as the Trustees may consider expedient so to delegate, so that no person or persons with whom such property is deposited or in whose name or names such property is vested shall (unless a Trustee or Trustees) be concerned with the trusts hereof or be responsible for any loss caused or breach of trust occasioned by any dealing with the same, or any payment of the income thereof made at the direction of the Trustees, whether or not having notice of the trust and further so that no Trustee hereof shall be liable or responsible for any loss whatsoever resulting, directly or indirectly, from the exercise of the powers in this Clause hereinbefore contained unless such loss be caused by his own fraud, breach of trust or wilful misdeed.

12. The Trustees shall have the power and authority, at any time and from time to time, to borrow money with full power to charge any part of the Trust Fund with the repayment of any moneys so borrowed, and may pay or apply the money so raised in any manner in which money forming part of the Trust Fund may be paid or applied. In the course thereof the Trustees shall have power to enter into any joint borrowing arrangement with any person, whether or not involving joint or several liability. No purchaser, lender or other person paying or advancing money on a sale, mortgage, charge or other transaction purporting to be made by the Trustees under or for any of the purposes hereof shall be concerned to see as to the propriety of the transaction or the application of the money.

-81-

13.   The Trustees shall have power and authority to permit any
Beneficiary or member of the Appointed Class to reside in any
dwelling house or other improved real property, to occupy any land,
or to have the custody and use of any chattels which may for the
time constitute part of the Trust Fund, upon such conditions as to
payment or non-payment of rent, rates, taxes and other expenses,
and generally upon such terms and conditions as the Trustees in
their absolute discretion shall think fit.   Except as otherwise
provided in this Settlement, the Trustees are expressly authorized
to invest in unproductive or underproductive property, or to retain
property in such state, if the Trustees deem such to be consistent
with Settlor's overall intentions and goals.

14.   The Trustees shall have power and authority, in any case
where there is doubt under the Applicable Law then governing this
Settlement, to treat as income or as capital any stock dividends,
rights, interests, issues and profits derived from any property at
any time constituting the whole or any part of the Trust Fund, and
in such a case to determine what part of the receipts of the Trust
is income and what is capital, whether or not such property is
wasting, hazardous, unproductive or underproductive, was purchased
at a premium or discount, and notwithstanding the time when such
stock dividends, rights, interests, issues or profits were earned,
accrued, declared or paid.

15.   The Trustees shall have power and authority in all cases
to make such reserves as the Trustees deem proper for expenses,
taxes and other liabilities of the Trust; to pay from the Trust
Fund or to apportion between income and capital any expenses, taxes
or liabilities of the Trust Fund, including without limitation,
expenses of making or changing investments and of selling,
exchanging or leasing, including brokers' commissions and charges;
to determine what part of the expenses of the Trust shall be
charged to capital and what part to income; to determine as between
separate funds and separate parts of shares the allocation of

-82-

00101

income, gains, profits, losses and distributions, and to determine
all other matters of trust accounting as the Trustees deem to be
proper and equitable.   Any decision of the Trustees under the
provision, whether made in writing or implied from their acts
shall, so far as the law may permit, be conclusive and binding on
the Beneficiaries and members of the Appointed Class and all
persons actually or prospectively interested under this Settlement.

16.   Subject to the restriction set forth in clause 3. of this
Schedule VI, the Trustees shall have the power and authority to
engage in any trade, or any venture in the nature of trade, whether
solely or jointly with any other person, and whether or not by way
of partnership (or any entity treated as a partnership for United
States Federal income tax purposes) under the jurisdiction of the
Applicable Law or elsewhere, and to make such arrangements in
connection therewith as they think fit.   The Trustees may delegate
any exercise of this power to any one or more  of their number to
a company or other corporate entity or to a partnership (or any
entity treated as a partnership for United States Federal income
tax purposes) formed for this purpose, provided that the person
carrying on any trade or venture in the nature of trade, so
authorized, shall have the power to determine what are the
distributable profits thereof.   So much of the distributable
profits as accrue to the Trustees (and no more) shall be income of
the Trust Fund for the purposes of this Settlement.   Any power
vested in the Trustees under this Settlement shall (where
applicable) extend to any arrangements in connection with any such
venture or partnership as aforesaid, and in particular but without
prejudice to the generality of the foregoing, the Trustees' powers
of  borrowing  and  charging  shall  extend  to  any  borrowing
arrangements made in connection with such venture or partnership as
aforesaid, whether made severally or jointly with others or with
unequal liability.

-83-

17.   The Trustees shall have the power and authority to take
the opinion of legal counsel, locally or where necessary or
appropriate elsewhere, concerning any difference arising under this
Settlement or any matter in any way relating to the Trust or to
their duties in connection with the trusts hereof and in all
matters to act in accordance with the opinion of such counsel.

18.   The Trustees shall have the power and authority to give
receipts for any money, securities or other property or effects, so
that any receipt so given shall be a sufficient discharge to the
person paying, transferring or delivering the same and shall
effectively exonerate him from seeing to the application thereof or
being answerable for any loss or misapplication thereof.

19.   The Trustees shall have the power and authority to:

(a)   Accept or refuse to accept any property, whether movable
      or immovable, before the time at which it is transferable
      or payable, including without limitation the power and
      authority to disclaim the Trust Fund's rights to life
      insurance proceeds or other death benefits which are
      payable to it.

(b)   Pay or allow any debt or claim on any evidence which they
      may think sufficient.

(c)   Accept any composition or any security, movable or
      immovable, for any debt or any property due to or claimed
      by the Trustees.

(d)   Allow any time for payment of any debt.

(e)   Compromise, compound, abandon, submit to arbitration or
      otherwise settle any debt, account, claim or thing
      relating to the Trust Fund without being liable for any

-84-

00103

loss to the Trust Fund or such accumulations as aforesaid thereby occurring.

(f) Advance money for the protection of the Trust Fund, or the assets thereof, and for all expenses, losses, and liabilities incurred in or by the collection, care, administration or protection of the Trust Fund or the assets thereof, and for such advances the Trustees shall have a lien on the Trust Fund assets and may reimburse themselves with interest at a reasonable rate out of the Trust Fund.

20.   The Trustees shall have the power and authority to insure against any loss or damage from any peril any property for the time being forming part of the Trust Fund for any amount, and to pay the premium payable in respect thereof out of the Trust Fund.

21.   The Trustees shall have the power and authority to enter into any indemnity in favor of any former Trustee or any other person in respect of any tax or fiscal imposition or other liability of any nature prospectively payable in respect of the Trust Fund, or otherwise in connection with this Settlement, and to charge or deposit the whole or any part of the Trust Fund as security for such indemnity in such manner in all respects as they shall think fit.

22.   The Trustees shall have the power and authority from time to time, and at such intervals as they shall in their sole discretion think fit, yet subject to Applicable Law, to cause the accounts kept by them hereunder to be examined or audited by such person or persons as they shall designate, and to pay the costs of such examination or audit out of the Trust Fund.

23.   The Trustees shall have the power and authority to keep the whole or any part of the Trust Fund within or without the jurisdiction of the Applicable Law.

-85-

00104

24.   Where the Trust Fund for the time being includes any real or immovable property (in this Clause 24. referred to as "the said land") the Trustees shall have all the powers of an absolute beneficial owner in respect thereof, and in particular but without prejudice to the generality of the foregoing, the Trustees shall not be bound to see nor be liable or accountable for omitting or neglecting to see to the repair or insurance of any buildings on the said land, or to the payment of any outgoings in respect thereof, but may repair and insure any such buildings in such manner and to such extent as they shall think fit, and shall pay out of the Trust Fund the costs of all such repairs and of effecting and keeping up any such insurance.   The Trustees may, from time to time, expend money comprised in the Trust Fund in erecting, demolishing, rebuilding, altering and improving any buildings on the said land or any part thereof to such extent and in such manner as they shall think fit, and the Trustees may, from time to time as they shall think fit, with respect to real property, subdivide, develop, and dedicate to public use; make or obtain the vacation of public plots; adjust boundaries; adjust differences in valuation on exchange or partition by giving or receiving money or money's worth; and dedicate and grant easements to public use without consideration.  Any certificate in writing of any architect or surveyor employed by the Trustees to the effect that any work specified in such certificate is or includes an alteration or an improvement to any such building shall be conclusive as between the Trustees and all persons interested hereunder that any money expended on such work was properly so expended in exercise of this power.

25.   During the Settlor's lifetime, the Trustees shall have the power and authority, by declaration in writing signed by them, revocable or irrevocable, to declare that as from a date specified in such declaration in writing (hereinafter called "the Appointed Date") a person who is an Excluded Person by reason only of being in the definition of Excluded Persons in Schedule IV hereto, and

-86-

for no other reason, shall cease to be an Excluded Person for all
the purposes of this Settlement from and after the Appointed Date
for the period stated in such declaration, so that such person
shall be eligible to benefit under this Settlement from the
Appointed Date for such period in all respects as if he had never
been an Excluded Person.   However, any exercise of any power or
discretion (other than the power contained in this Clause 25.)
conferred on the Trustees by this Settlement which confers or is
intended to confer a benefit of whatsoever nature on such a person,
whether direct or indirect, on or after the Appointed Date shall be
null and void if the exercise of such power or discretion occurs
before the Appointed Date.

26.   The Trustees shall have the power and authority to
receive the benefits payable under any life insurance policy,
employee benefit plan, or other death benefits; the power and
authority to receive the proceeds from the sale or other
disposition of assets held from time to time by the Trustees
pursuant to this Settlement; and the power and authority to receive
the dividends, interest or returns, paid upon, and other forms of
accretions in value to, such assets.   Payment to the Trustees or
any one of them and the receipt by the Trustees or any one of them,
or the release by the Trustees, shall fully discharge any payor.

27.   The Powers and provisions of the International Trusts Act
1984 (Cook Islands) and its Amendments and Regulations are
incorporated herein by this reference.   In the event of any
conflict between a power, authority or discretion of the Trustees
as set forth in this Settlement, and as set forth in the
International Trusts Act, to the extent the International Trusts
Act is not obligatory with respect thereto, the power, authority or
discretion hereof shall govern.

-87-

00106

## SCHEDULE VII TO THE
## <u>914 TRUST</u>

Appointment of new Protector under ARTICLE VII, Paragraph B. of this Settlement of Trust:

       1.    The Protector

       2.    The Trustees

00107

## SCHEDULE VIII TO THE
## 914 TRUST

Powers, authorities and discretions of the Trustees which shall be subject to the Protector's veto power as referenced in Paragraph D., ARTICLE VII of this Settlement of Trust:

1.   With respect to the body of the Settlement, those mentioned or referenced in  ARTICLE III, Paragraphs A. and H.; ARTICLE IV, Paragraph B., the second paragraph thereunder (so long as, and during such periods as, the Protector is not acting as the result of or subject to duress or compulsion of any nature); ARTICLE V, Paragraphs E., F., I., J. and K.; ARTICLE VI, Paragraphs A., B., C., D., E., F., H. and I.; and ARTICLE X, Paragraph B., the second paragraph thereunder.

2.   With respect to SCHEDULE VI, those mentioned or referenced in clauses 3., 5., 11., 12., 13., 16., and 25.

3.   The powers, authorities and discretions to change the investments comprised in the Trust Fund from time to time, to be exercised by the Protector consistent with the Settlor's overall goals and intentions as set forth in the Settlement of Trust.

00108

SCHEDULE IX TO THE

914 TRUST

The special provisions referenced in ARTICLE X, Paragraph K. of this Settlement of Trust are as follows:

1.   The Settlor shall only be entitled to receive distributions of Trust Fund net income or capital to the extent such is reasonably necessary or appropriate as determined in the sole discretion of the Trustees for the Settlor's needs for health, support or maintenance in the Settlor's accustomed standard of living, after considering the Settlor's other income or resources.

2.   If at any time a person who is serving as a Trustee is also appointed as and becomes a Protector, such person shall be deemed to have resigned as Trustee hereof, the person having the power to appoint successor or additional Trustees shall be deemed to have accepted the resigning Trustee's resignation immediately upon such resigning Trustee's acceptance of the appointment as Protector, and the procedures for Trustee resignations within Paragraph C. of ARTICLE IV shall be deemed to have been satisfied.

3.   It is the Settlor's intent that neither the Trust Fund nor any part thereof be included within the gross estate of any Trustee or Protector (other than the Settlor) for United States federal estate tax purposes due, in any part, to such person's powers as a Trustee or Protector, as the case may be, hereunder.  At the same time, it is the Settlor's intent that no "substantial decisions" (as such term is understood for purposes of Code Section 7701(a)(30)) shall thereby devolve onto any non-United States person under circumstances that would cause the Trust or any sub-trust hereunder to be considered a foreign trust for United States federal income tax purposes (unless, at such time, the intent that the Trust be considered a foreign trust is manifested by the terms of ARTICLE IX of the Settlement).

Accordingly, and notwithstanding anything to the contrary set forth in this Settlement of Trust, no Trustee or Protector (other than the Settlor) shall ever:

-90-

00109

a.  participate in any decision or action the effect of
    which would be to add such person, his creditors,
    his estate, the creditors of his estate, or any
    person whom he is obligated to support as a
    Beneficiary, as a member of the Appointed Class, or
    as a person with any other type of beneficial
    interest hereunder;

b.  participate in the exercise of any discretion over
    distributions of trust property to or for the
    benefit of any beneficiary which would discharge
    any legal obligation (including a legal obligation
    of support) of such Trustee or Protector;

c.  exercise any authority or powers hereunder,
    including any power to alter or amend the
    provisions of this Settlement of Trust, the effect
    of which would be (i) to benefit that Trustee or
    Protector, as the case may be, his creditors, his
    estate or the creditors of his estate; (ii) to add
    any such person as a Beneficiary, as a member of
    the Appointed Class, or as a person with any other
    type of beneficial interest hereunder; or (iii) to
    terminate any trust hereunder if such may directly
    or indirectly inure to the benefit of such Trustee
    or Protector, as the case may be, including the
    fulfillment of an obligation of support; provided,
    however, that any such authority or power can be
    exercised with respect to distributions to such
    Trustee or Protector if he or she is a beneficiary
    hereunder to the extent (but no further) that
    distributions are authorized hereunder to be made
    for such person's health, maintenance, education
    and support;

d.  have any power or authority to deal with or
    exercise any of the "incidents of ownership", as
    such term is defined in the Internal Revenue Code
    and its regulations, of any insurance policies on
    such person's life which may, at any time, form a
    part of the assets of the corpus of the trust
    estate; or

e.  after the death of the Settlor, and with respect to
    any trust thereafter created in which such person
    has a beneficial interest, participate in the
    exercise of investment decisions other than
    pursuant to the prudent investor standard
    applicable in the state of the place of
    administration of the Trust, as set forth in
    ARTICLE IX, or participate in the allocation of
    receipts and expenditures between principal and

-91-

income except pursuant to the Revised Uniform
Principal and Income Act, or an applicable state
statute based thereon.

In each such case, the determination of the remaining
U.S. domestic Trustee(s) or U.S. domestic Protector(s),
as the case may be, shall control.  If there are no other
then acting U.S. domestic Trustees, then any such Trustee
power may be exercised by a substitute U.S. domestic
Trustee designated pursuant to Paragraph E. of ARTICLE V
(unless, at such time, the intent that the Trust be
considered a foreign trust is manifested by the terms of
ARTICLE IX of the Settlement, in which case the power may
be exercised by a non-U.S. Trustee, if applicable).  If
there are no other then acting U.S. domestic Protectors,
then the Protector may form a Committee of Protectors for
such purpose pursuant to Paragraph G. of ARTICLE VII
(unless, at such time, the intent that the Trust be
considered a foreign trust is manifested by the terms of
ARTICLE IX of the Settlement, in which case the power may
be exercised by a non-U.S. Protector, if applicable).
For purposes of this paragraph, "U.S. domestic Trustee"
and "U.S. domestic Protector" shall mean a Trustee or
Protector, as the case may be, who falls within the
definition of a "United States person" for purposes of
Code Section 7701(a)(30).

Notwithstanding anything to the contrary set forth in
this Settlement of Trust, no Trustee shall have any power
or authority to revoke or amend in any manner the
provisions of this clause of Schedule IX during any
period of time during which either (i) the respective
Protector for that portion of the Trust Fund is unable,
for whatever reason, to exercise his or her veto power
over such revocation or amendment, or (ii) a person whose
interests are substantially adverse to the exercise of
any power hereunder in favor of such Trustee is not then
acting as Protector over the relevant portion or portions
of the Trust Fund.

4.    The Trustees in their sole discretion may consolidate and
merge any separate trust which is created after the death
of the Settlor within this Settlement of Trust with any
other trust created by Settlor, which other trust
contains substantially the same terms as such separate
trust and which other trust is for the same beneficiary
or beneficiaries; and, thereafter, the Trustees of such
other trust may administer such consolidated and merged
trusts as one unit.  If such consolidation and merger
does not occur, the Trustees in their sole discretion may
elect to cooperate and coordinate benefit distributions
with the Trustees of such other trust.  Notwithstanding

-92-

00111

the foregoing, however, trusts with different inclusion ratios may only be consolidated and merged provided that their respective inclusion ratios are maintained unchanged through establishment by the Trustees of substantially separate and independent shares.

5.   a.   It is a planning objective, which is precatory and not binding on the Trustees, that, in determining whether and how to exercise the Trustees' discretion as to distributions from any trust created under this Settlement of Trust, that the Trustees will consider ways to reduce federal and state generation-skipping transfer ("GST") taxes upon the property in the Trust Fund and correspondingly to increase the amount of property ultimately passing to at least some of the beneficiaries of the Trust.  For purposes of the below discussion, each reference to a "Code Section" shall be to that referenced Section of the 1986 United States Internal Revenue Code, as it presently exists and as it may be amended hereafter, or any substitute or successor Code section therefor.  In furtherance of the Settlor's planning objectives, the Settlor suggests that the Trustees consider:

i.   making distributions of property, including income, from a trust or sub-trust which does not have a zero inclusion ratio as defined in Code Section 2642(a) for the benefit of skip persons (as defined in Code Section 2613(a)) for medical and tuition expenses, with such distributions being made directly to the provider of the services, which distributions will be excluded from the definition of generation-skipping transfer by Section 2611(b)(1) of the Code;

ii.   making distributions of property, including income, from a trust or sub-trust which does not have a zero inclusion ratio to non-skip persons as defined in Section 2613(b) of the Code; and

-93-

00112

      iii. making distributions . of property,
including income, from a trust or sub-
trust which has a zero inclusion ratio as
defined in Section 2642(a) of the Code,
to skip persons as defined in Section
2613(a) of the Code.

In making distributions to non-skip persons, the
Trustees should consider making sufficient
distributions to enable the non-skip person to utilize
the non-skip person's unified credit provided by
Section 2010 of the Code, and the non-skip person's
gift and estate tax brackets set forth in Section 2001
of the Code, if by making such distributions the
Trustees think that the inclusion in such non-skip
person's estate or in a gift subsequently made by such
non-skip person may achieve a significant savings in
the transfer tax by incurring an estate tax or gift
tax, rather than the GST tax which would otherwise be
imposed, and thereby increase the amount of property
ultimately passed to at least some of the
beneficiaries of the trust.

b.   The Settlor directs that in the event there is no
executor appointed in the Settlor's estate, the
Trustees shall be deemed the "executor," as that term
is defined in the Code, and the Trustees shall have
the power to allocate such Settlor's unused GST
exemption. Except to the extent allocable pursuant to
other provisions of this Settlement of Trust, the
Trustees are directed to allocate the Settlor's GST
tax exemptions to and among dispositions of property
with respect to which the Settlor is the transferor,
whether contained in this Settlement of Trust or
otherwise, in such manner as the Trustees, in the
Trustees' sole discretion, deem best calculated to
secure the most effective utilization of such
exemptions, based on circumstances and events either
known or reasonably foreseeable as of the expiration
of the time within which such allocation is required
to be made. While equality of treatment among
different beneficiaries or beneficiary groups should
be an important consideration in allocating such
exemptions, it should not be the sole or even the
primary consideration. For example, a pro-rata
allocation between two (2) trusts or sub-trusts might
be appropriate if there is a substantial likelihood
that all or a significant portion of both of them will
be distributed to or terminate in favor of. skip-
persons, but inappropriate if there is a substantial
likelihood that all or a significant portion of one of
them will be distributed to or terminate in favor of

-94-

non-skip persons.   Any allocation so made by the
Trustees shall be binding on all persons interested in
the dispositions with respect to which the Settlor is
the transferor and the Trustees shall have no
liability if, as the result of or in light of
subsequent events, the benefits of the exemptions fall
inequitably, or a different allocation would have
protected a higher value of assets from a GST tax.

c.   The Trustees may, at any time and from time to time
(whether before or after funding) and without court
approval, for tax and/or administrative reasons,
divide any trust hereunder into two or more separate
trusts (based on the fair market value of the trust
assets at the time of the division) and combine two or
more trusts hereunder with substantially identical
terms (whether or not such trusts were previously
separate from one trust or sub-trust).   If any
property is directed to be added to any trust or sub-
trust hereunder, then the Trustees may hold such
property as one or more separate trusts or sub-trusts
on terms identical to the terms of the trust or sub-
trust to which it was to be added and may allocate
such property non-pro rata among the several trusts or
sub-trusts, if any, into which the trust or sub-trust
to which such property has been added was previously
divided (including an allocation of all such property
to one of such trusts or sub-trusts).   Anything herein
to the contrary notwithstanding, if some or all of
Settlor's unused GST exemption is to be allocated to
any trust created hereunder, following the death of
the Settlor, unless the trust in question will have an
inclusion ratio of zero (0), that trust shall be
divided into two (2) separate sub-trusts, so that one
shall be exempt and the other shall be non-exempt,
with the non-exempt trust receiving the minimum dollar
amount necessary to leave the exempt trust with an
inclusion ratio of zero.   Such separate sub-trusts
shall be held, administered and distributed in the
same manner as the trust from which they were divided.
The funding of the pecuniary amount of the non-exempt
trust may be satisfied in cash or in kind, in
undivided interests, or partly in each.   Any assets
that are used to satisfy the pecuniary amount shall be
valued for this purpose at their date or dates of
distribution.   The pecuniary amount shall bear
interest from the date specified under applicable
local law (and, if none, from the date of the
Settlor's death, as the case may be) to the date of
payment, such interest to be at the statutory rate
applicable to pecuniary bequests under state law
governing the administration (and, absent such

-95-

for GST tax purposes. The Trustees shall report any
qualified severance to the Internal Revenue Service in
the manner required by any applicable Code Section or
Treasury Regulation.

d. Notwithstanding any other provision of this Settlement
of Trust, if property which is not exempt for GST tax
purposes is directed to be added to a trust or sub-
trust which is exempt for such purposes, then the
Trustees may decline to make the addition and instead
administer the property as a separate trust or sub-
trust with provisions identical to the exempt trust or
sub-trust.

e. The Trustees are specifically exonerated from any
liability arising from any exercise or failure to
exercise these powers, provided the actions (or
inactions) are made (or failed to be made) in good
faith. Any allocations made by the Trustees shall be
conclusive on all persons interested in any such
disposition, and the Trustees shall have no liability
if, in light of or as the result of subsequent events,
a different allocation would have caused a higher
value of assets to be exempt from any GST tax.

f. The Trustees shall have the authority to grant to any
beneficiary of any trust or sub-trust or share of a
trust or sub-trust having an inclusion ratio for GST
tax purposes greater than zero (the "donee") a
lifetime or testamentary general power of appointment
over all or any amount or portion of the capital of
such trust or sub-trust or share if the Trustees deem
such result to be in the best interests of the
beneficiary or beneficiaries of the trust or sub-trust
and the potential beneficiaries of the donee's estate
taken as a group. In granting any such general power
of appointment, the Trustees may specifically limit
the permissible appointees thereunder, consistent with
qualifying the power of appointment as a general power
of appointment as defined for purposes of Code
Sections 2041 and/or 2514. As an inducement to the
Trustees to grant such a power in an appropriate case,
the Settlor hereby directs that the Trustees'
decisions under this paragraph shall be absolutely
binding on all beneficiaries of the trust or sub-trust
and of the donee's estate and that the Trustees shall
incur no liability by reason of any adverse
consequence of such decisions to any such beneficiary.
Any such grant of a power of appointment shall be
contained in an acknowledged written instrument
delivered to the donee. Such instrument shall specify
the amount or portion of the trust or trust share to
which the power shall apply (any such amount to be
expressed either as a dollar amount or in terms of a

-97-

00115

formula to be applied to values or amounts to be
determined as a result of the donee's death), and
contain such restrictions as to the scope of the power
and the method of its exercise as the Trustees shall
deem appropriate.   Any power of appointment so
conferred may be modified or revoked by the Trustees
in an acknowledged written instrument of modification
or revocation delivered to the donee prior to exercise
of the power.

00116

IN WITNESS WHEREOF, the parties have executed this Settlement
of Trust.


SIGNED, SEALED AND DELIVERED          )
by the said Lonnie Moore,             )
Settlor, in the presence of:          )        _____
                                               (Settlor's signature)

(Witness' signature)

KIMBERLY GRANT
(Printed name)

6830 LELAND WAY
(Address)

MANAGERIAL
(Occupation)


SIGNED, SEALED AND DELIVERED          )
by the said James MacDonald,          )
Trustee, in the presence of:          )        _____
                                               (Trustee's Signature)

(Witness' signature)

KIMBERLY GRANT
(Printed name)

6830 LELAND WAY
(Address)

MANAGERIAL
(Occupation)


-99-

00117.

SIGNED on behalf of Cook Islands)
Trust Limited as Trustee       )
by _ANTONY WILL_               )
as its duly authorised power of )
attorney in the presence of:   )

_____
(Trustee's authorised
signatory)

_____
(Witness' signature)

_____
(Printed name)

_____
(Address)

_____
(Occupation)



SIGNED, SEALED AND DELIVERED )
by the said Lonnie Moore,    )
Protector, in the presence of: )

_____
(Protector's signature)

_____
(Witness' signature)

KIMBERLY GRANT
_____
(Printed name)

6830 LELAND WAY
_____
(Address)

MANAGERIAL
_____
(Occupation)


COOK2.TRU

-100-

00118

# EXHIBIT 2

RECORDING REQUESTED BY
Engel & Reiman pc

AND WHEN RECORDED, MAIL TO
Engel & Reiman pc
730    17ᵗʰ Street, Suite 500
Denver, CO 80202



06/10/08

20081026077

A P N 5570-038-021

This space for Recorder's Use

## GRANT DEED

THE UNDERSIGNED GRANTOR DECLARES
DOCUMENTARY TRANSFER TAX IS COUNTY $0.00
CITY TRANSFER TAX $0.00
SURVEY MONUMENT FEE $0.00
[  ] computed on full value of property conveyed, or
[  ] computed on full value less value of liens or encumbrances remaining at time of sale.
[  ] unincorporated area.  [ X ] City of Los Angeles, and

**NO DOCUMENTARY TRANSFER TAX – TRANSFER TO GRANTOR TRUST
FOR NO CONSIDERATION**

Edward D. Brown, Esq.

**LONNIE MOORE, A SINGLE MAN**, for NO CONSIDERATION

Hereby GRANTS to **JAMES MacDONALD** and **COOK ISLANDS TRUST
LIMITED, AS TRUSTEES OF THE 914 TRUST DATED MARCH 26, 2008**

the following described property in the City of **LOS ANGELES**, County of **LOS
ANGELES**, State of California.

THAT PORTION OF LOT(S) 14 OF TRACT NO. 24118. IN THE CITY OF LOS
ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP
RECORDED IN BOOK 630, PAGE(S) 64 TO 66 OF MAPS, IN THE OFFICE OF THE
COUNTY RECORDER OF SAID COUNTY. LYING WESTERLY ON THE
FOLLOWING DESCRIBED LINE:

BEGINNING AT THE NORTHEASTERLY TERMINUS OF THAT CERTAIN
COURSE IN THE NORTHWESTERLY LINE OF SAID LOT 14, SHOWN ON SAID
MAP AS NORTH 30° 27' 55" EAST 50 79 FEET, THENCE SOUTHERLY IN A
STRAIGHT LINE TO A POINT IN THE EASTERLY LINE OF SAID LOT 14,
DISTANT ALONG SAID SOUTHEASTERLY LINE, NORTH 52° 32' 34" EAST 59 11
FEET FROM THE SOUTHWESTERLY CORNER OF SAID LOT 14

1 of 2

3

Dated  5/21/08

_____
Lonnie Moore

STATE OF CALIFORNIA          )
                             ) ss
COUNTY OF ~~Los Angeles~~    )

    On _____, 20~~0~~  before me, ___David J. Jarrett___
Notary Public, personally appeared Lonnie Moore personally known to me (or proved to
me on the basis of satisfactory evidence) to be the person whose name is subscribed to
the within instrument and acknowledged to me that he executed the same in his
authorized capacity

WITNESS my hand and official seal.

                                          See Attached Certificate

Signature _____

Notarial Seal _____

Mail Tax Statements to
c/o James MacDonald, 6633 Hollywood Boulevard, Hollywood, California 90028

Grant Deed (05-08).doc

00120

4

## ACKNOWLEDGMENT

State of California
County of ___Los Angeles___

On ___May 21, 2008___ before me ___David J. Jarrett, Notary Public___
                                    (insert name and title of the officer)

personally appeared ___Lonnie Moore___
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct

WITNESS my hand and official seal

Signature _____ (Seal)

DAVID J JARRETT
COMM # 1619930
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
COMM EXPIRES NOV 8 2008

# EXHIBIT 3



**This page is part of your document - DO NOT DISCARD**

# 20120853701





**Pages:**
**0004**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**06/07/12 AT 02:40PM**

| | |
|---|---|
| FEES: | 34.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 34.00 |



**L E A D S H E E T**

201206070040008

00005935079

004053005

**SEQ:**
**01**

**DAR - Counter (Upfront Scan)**

**THIS FORM IS NOT TO BE DUPLICATED**



Recording requested by: Lonnie Moore

And when recorded, mail this deed and tax statements to:

Mr. Lonnie Moore
6633 Hollywood Blvd.



06/07/2012

*20120853701*



## MINISTRY OF FOREIGN AFFAIRS & IMMIGRATION
### GOVERNMENT OF THE COOK ISLANDS

---

### APOSTILLE
(Convention de La Haye du 5 Octobre 1961)

1. Country: Cook Islands

   This public document

2. has been signed by _Marie Francis_

3. acting in the capacity of _Notary Public_

4. bear the seal/stamp of _Notary Public_

---

### Certified

5. at: Rarotonga          6. the _18th April 2012_

7. by: The Ministry of Foreign Affairs and Immigration

8. N°. _2892_

9. Seal/Stamp:          10. Signature



00123


06/07/2012

*20120853701*

Recording requested by: Lonnie Moore

And when recorded, mail this deed and tax statements to:

Mr. Lonnie Moore
6633 Hollywood Blvd.
Los Angeles, CA 90028

For recorder's use

## QUITCLAIM DEED

TRA: 0-067

APN: 5570-038-021

■ This transfer is exempt from the documentary transfer tax: The grantor(s) and the grantee(s) in this conveyance are comprised of the same parties who continue to hold the same proportionate interest in the property, R & T § 11925(d).
■ The documentary transfer tax is $0.00 and is computed on:
   □ the full value of the interest or property conveyed.
   □ the full value less the liens or encumbrances remaining thereon at the time of sale.
The property is located in □ an unincorporated area □ the City of Los Angeles.

FOR VALUABLE CONSIDERATION, the receipt of which is acknowledged, JAMES MACDONALD, as Trustee of the 914 Trust dated March 26, 2008, by COOK ISLANDS TRUST PROTECTORS LTD, in its capacity as Protector of the 914 Trust, as Attorney-in-Fact pursuant to a power of attorney granted to it in Article IV, Paragraph E of the Settlement of Trust dated March 26, 2008,

hereby REMISE, RELEASE AND QUITCLAIM to COOK ISLANDS TRUST LIMITED, as Trustee of the 914 TRUST dated March 26, 2008, all of his interest in the following described real property situated in the City of Los Angeles, County of Los Angeles, State of California:

SEE EXHIBIT A ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE.

Date: _18th April 2012_

_James MacDonald by Antony Will, authorised signatory of Cook Islands Trust Protectors Ltd in its capacity as Protector, as Attorney-in-fact_

JAMES MACDONALD, as Trustee of the 914 Trust dated March 26, 2008, by Cook Islands Trust Protectors Ltd, in its capacity as Protector of the 914 Trust, as Attorney-in-Fact pursuant to a power of attorney granted to it in Article IV, Paragraph E of the Settlement of Trust dated March 26, 2008

COUNTRY OF _Cook Islands_
~~STATE OF~~ _Rarotonga_
~~COUNTY OF~~ _____

On _18 April_, 2012, before me, _Marie Francis_____, Notary Public, personally appeared _Antony Will_____, an authorized representative of Cook Islands Trust Protectors Ltd, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacities, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of _Cook Islands_____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary Public

COOK ISLANDS

Marie Francis
Notary Public
★ ★
Rarotonga Cook Islands

00124

## EXHIBIT A

THAT PORTION OF LOT(S) 14 OF TRACT NO. 24118, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 630, PAGE(S) 64 TO 66 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING WESTERLY ON THE FOLLOWING DESCRIBED LINE:

BEGINNING AT THE NORTHEASTERLY TERMINUS OF THAT CERTAIN COURSE IN THE NORTHWESTERLY LINE OF SAID LOT 14, SHOWN ON SAID MAP AS NORTH 30° 27' 55" EAST 50.79 FEET, THENCE SOUTHERLY IN A STRAIGHT LINE TO A POINT IN THE EASTERLY LINE OF SAID LOT 14, DISTANT ALONG SAID SOUTHEASTERLY LINE, NORTH 52° 32' 34" EAST 59.11 FEET FROM THE SOUTHWESTERLY CORNER OF SAID LOT 14

00125

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>ELISSA D. MILLER, Chapter 7 Trustee | DEFENDANTS<br>LONNIE TODD MOORE, individually and in various capacities in connection with the 914 Trust dated March 26, 2008; COOK ISLANDS TRUST LIMITED, a foreign corporation domicled in Cook Islands, as trustee of the 914 Trust Dated March 26, 2008; ANTONY WILL, as trustee of the Cook Islands Trust Limited |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Asa S. Hami (CA Bar No. 210728)<br>  ahami@sulmeyerlaw.com<br>Jessica L. Vogel (CA Bar No. 285328)<br>  jvogel@sulmeyerlaw.com<br>**Sulmeyer**Kupetz, A Professional Corporation<br>333 South Hope Street, Thirty-Fifth Floor<br>Los Angeles, California  90071-1406<br>Telephone: 213.626.2311 /Facsimile: 213.629.4520 | **ATTORNEYS** (If Known) |

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| ☐ Debtor       ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor     ☐ Other<br>☒ Trustee | ☒ Debtor       ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor     ☒ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
AVOIDANCE OF FRAUDULENT TRANSFERS (11U.S.C. § 548(e));  RECOVERY OF TRANSFERRED PROPERTY OR VALUE THEREOF (11 US.C. § 550);  PRESERVATION OF AVOIDED TRANSFERS (11 U.S.C. § 551); TURNOVER OF PROPERTY (11 U.S.C. § 542);  DECLARATORY RELIEF;  ACCOUNTING

### NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

| | |
|---|---|
| **FRBP 70 01( 1) – Recovery of Money/Property**<br>☒ 11-Recovery of money/propert y - §542 turnover of property<br>☐ 12-Recovery of money/property - §547 preference<br>☒ 13-Recovery of money/property - §548 fraudulent transfer<br>☐ 14-Recovery of money/property - other | **FRBP 70 01(6) – Dischargeability (continued)**<br>☐ 61 -Dischargeability- §523(a)(5) , domestic support<br>☐ 68-Dischargeability - §523(a)(6), willful and malicious injury<br>☐ 63-Dischargeability - §523(a)(8), student loan<br>☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation<br>        (other than domestic support) |
| **FRBP 70 01 (2) – Validity, Priority or Extent of Lien**<br>☐ 21-Validity, priority or extent of lien or other interest in property | ☐ 6 5 -Dischargeability - other |
| **FRBP 7001( 3) – Approval of Sale of Property**<br>☐ 31-Approval of sale of property of estate and of a co-owner - §363(h) | **FRBP 70 01(7) – Injunctive Relief**<br>☐ 71 -Injunctive relief- imposition of stay<br>☐ 72-Injunctive relief - other |
| **FRBP 7001(4 ) – Objection/ Revocation of Discharge**<br>☐ 41-Objection/re vocation of discharge - §727(c),(d),(e) | **FRBP 70 01(8) Subordination of Claim or Interest**<br>☐ 81 -Subordination of claim or interest |
| **FRBP 7001(5) – Revocation of Confirmation**<br>☐ 51-Revocation of confirmation | **FRBP 70 01(9) Declaratory Judgment**<br>☐ 91 -Declaratory judgment |
| **FRBP 7001(6) – Dischargeability**<br>☐ 6 6 -Dischargeability - §523(a)(1),(14),(14A) priority tax claims<br>☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation,<br>        actual fraud<br>☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny | **FRBP 70 01(10) Deter mi nation of Remove d Act ion**<br>☒ 01 -Determination of removed claim or cause<br>**Other**<br>☐ SS-SIPA Case - 15 U.S.C. §§78aaa *et.seq.*<br>☐ 02-Other (e.g. other actions that would have been brought in state court<br>        if unrelated to bankruptcy case) |
| **(continued next column)** | |

| ☐ Check if this case involves a substantive issue of state law | ☒ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | ☒ Demand $ 2,650,000.00 |

Other Relief Sought
Accounting


American LegalNet, Inc.
www.FormsWorkFlow.com

**B1040 (FORM 1040) (12/15)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>LONNIE TODD MOORE | BANKRUPTCY CASE NO.<br>2:16-bk-12889-SK | |
| DISTRICT IN WHICH CASE IS PENDING<br>CENTRAL | DIVISION OFFICE<br>LOS ANGELES | NAME OF JUDGE<br>SANDRA R. KLEIN |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| PLAINTIFF<br>ELISSA D. MILLER, Chapter 7 Trustee | DEFENDANT<br>LONNIE TODD MOORE | ADVERSARY<br>PROCEEDING NO.<br>2:16-ap-01324-SK |
| DISTRICT IN WHICH ADVERSARY IS PENDING<br>CENTRAL | DIVISION OFFICE<br>LOS ANGELES | NAME OF JUDGE<br>SANDRA R. KLEIN |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>SulmeyerKupetz, A Professional Corporation<br>/s/ Jessica L. Vogel | | |
| DATE<br>July 27, 2016 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Jessica L. Vogel | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.


American LegalNet, Inc.
www.FormsWorkFlow.com